[Civ. No. 29767. Fourth Dist., Div. Two. Jan. 10, 1984.]

NEWBERRY SPRINGS WATER ASSOCIATION et al.,
Plaintiffs and Appellants, v.
COUNTY OF SAN BERNARDINO et al., Defendants and Respondents;
JAMES A. KONING, Real Party in Interest and Respondent.

COUNSEL

McDonough, Holland & Allen, Martin McDonough and Bruce McDonough for Plaintiffs and Appellants.

Alan K. Marks, County Counsel, and Clark H. Alsop, Deputy County Counsel, for Defendants and Respondents.

Reed & Samuel, James S. Reed and Carl R. Samuel for Real Party in Interest and Respondent.

OPINION

MORRIS, P. J.—Plaintiffs have appealed from a judgment denying a writ of mandate and complaint for injunctive relief. Plaintiffs sought to set aside the site approval for a dairy in the Newberry Springs area of San Bernardino County.

FACTS

On January 26, 1981, real party in interest James Koning filed a site approval application for a 900-cow dairy. The San Bernardino County Planning Department prepared referral memos inviting comments on the project and stating the dates for decision by the environmental and planning departments. The memos were sent to relevant agencies and to 49 adjacent property holders, including plaintiff Selurnic, president of plaintiff Newberry Springs Water Association. An initial study of potential environmental impact was made pursuant to section 15080 of the Guidelines for Implementation of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq., Cal. Admin. Code, tit. 14, § 15080). The study found no significant environmental effects.

On March 10, 1981, the environmental hearing officer (EHO) held a public hearing at which a negative declaration was issued, stating the project would have no significant environmental effect. The planning commission subcommittee held another public hearing in April. Notice of the hearing stated a negative declaration had been issued for the project. Plaintiff Selurnic, along with others, appeared and testified in opposition to the project. The planning department adopted the negative declaration, approved the site application, and caused a notice of determination to be filed with the clerk of the county pursuant to Public Resources Code section 21152.

The plaintiffs, represented by Selurnic, appealed to the board of supervisors. The board held a hearing on May 26, 1981, at the close of which it upheld the negative declaration and approved the site application.

The plaintiffs brought an action in the trial court, alleging that they were not given adequate notice of the preparation of the negative declaration, and that the county violated CEQA in failing to prepare an environmental impact report (EIR) prior to granting the site approval. The trial court determined that plaintiffs had been given reasonable notice of all actions taken by the county, that plaintiffs had failed to exhaust their administrative remedies because they failed to appeal the EHO's issuance of the negative declaration to the environmental review board (ERB) as required by the San Bernardino

County Code, and that the board action was supported by substantial evidence. In addition, the court found that, applying the standard of review asserted by plaintiffs (i.e., whether there was substantial evidence of a fair argument that significant environmental effects would occur), the evidence produced by plaintiffs was not substantial.

### NOTICE

 Plaintiffs claim that the county failed to comply with Public Resources Code section 21092 which requires that "Any public agency which is preparing an environmental impact report or a negative declaration shall provide public notice of such fact within a reasonable period of time prior to the final adoption by the public agency . . . ."

 Under CEQA, when the "lead" agency determines that a proposed project will not have a significant impact on the environment, it adopts a negative declaration to that effect. (Pub. Resources Code, § 21080, subd. (c).) The lead agency is the agency with responsibility for approving the project as a whole, and may be a county, district board or commission. (Pub. Resources Code, §§ 21067, 21063.) The county code provides that the board of supervisors is the final nonjudicial level for decisions on land use cases. (San Bernardino County Code, § 83.01135.) Because the board has the ultimate responsibility to approve or disapprove projects, it is the lead agency. Therefore, for the purposes of the notice requirement of section 21092, the final adoption of the negative declaration occurs when it is adopted by the board of supervisors.

 Plaintiffs claim that they had inadequate notice because the referral notice merely stated that the project was to be reviewed, and that the later notice of hearing by the planning commission stated the environmental hearing officer had *issued* a negative declaration. Plaintiffs contend that they were never notified a negative declaration was being *prepared;* that the negative declaration was final at the time of notice of the planning commission hearing and plaintiffs were left only to the appeal process. However, plaintiffs themselves, in their original points and authorities, asserted that the county's determination did not become final until action was taken by the board of supervisors.

Plaintiffs had legal and actual notice well in advance of those proceedings. The referral memo of February 10, 1981, notified them that some action was to be taken on the site approval application. Plaintiffs responded to that memo. The notice of hearing before the planning commission subcommittee stated that a negative declaration had been issued and invited opposing tes-

timony. Plaintiffs testified at the hearing. Notice of the hearing before the board of supervisors was sent, and plaintiffs appeared and testified.

Plaintiffs cite *Plaggmier* v. *City of San Jose* (1980) 101 Cal.App.3d 842 [161 Cal.Rptr. 886], for the proposition that if no proper effort has been made to give notice of the negative declaration, it is void. However, the Legislature has expressly responded to *Plaggmier* by affirming the general principle that statutory requirements for public notice are fulfilled if the public agency makes a good faith effort to follow the procedures prescribed by law for giving notice. (Stats. 1980, ch. 131, § 4, p. 304.) The mailing of the referral memos and notices of hearings demonstrate a good faith effort by the county to give notice of the negative declaration. Further, plaintiffs' response and testimony at the hearings demonstrate actual notice within a reasonable time in accordance with section 21092.

### ADMINISTRATIVE REMEDIES

■ Plaintiffs contend that the trial court erred in finding plaintiffs failed to exhaust administrative remedies by not appealing the EHO's decision to the ERB. Plaintiffs also contend that the EHO misled them regarding the proper procedure under the county code, that an appeal to the ERB would have been futile, and that the doctrine of exhaustion of administrative remedies does not apply to members of the public not party to administrative hearings. The record shows that the EHO did not mislead plaintiffs and that the parties on appeal and in the proceedings below participated in the administrative proceedings. However, because we find that the county code, as interpreted by defendants, curtails rights provided by state law, we find it unnecessary to consider these contentions.

The county code provides that the ERB shall hear appeals from the EHO (San Bernardino County Code, §§ 83.01420, 82.0420). Appeals are to be brought within 14 days (Environmental Administrative Guidelines for Local Entities, § 51.000, subd. (c)). The ERB's decision is appealable to the planning commission, and the planning commission's decisions are appealable to the board of supervisors (San Bernardino County Code, § 84.0220, subd. (a)).

Defendants contend that since plaintiffs failed to appeal the EHO's decision to the ERB, plaintiffs could not then appeal the decision to the board of supervisors and had failed to exhaust their administrative remedies. Thus, the trial court had no jurisdiction to hear the matter. However, if the county code is interpreted as the county urges, it curtails rights provided by state law.

CEQA provides that the lead agency, the board of supervisors in this case, shall file a notice of determination when it approves a project for which a negative declaration has been prepared. (Pub. Resources Code, §§ 21152, 21080.1.) Public Resources Code section 21167, subdivision (b) specifically allows 30 days from the filing of the notice within which to institute any action or proceeding challenging the negative declaration. The county's procedures, as interpreted by the county counsel, would cut off that right to attack the lead agency's action even before the negative declaration is adopted. Those who do not appeal the EHO's decision within 14 days to the ERB would be forever barred from bringing the action contemplated by section 21167. We conclude that plaintiffs' failure to appeal to the ERB did not deprive the court of jurisdiction to consider the propriety of the board action approving the negative declaration.

STANDARD OF REVIEW

Section 21151 of the Public Resources Code provides that all local agencies shall prepare an EIR for any project which "may have a significant effect on the environment." This section has been interpreted to require an EIR whenever it can be "fairly argued on the basis of substantial evidence that the project may have significant environmental impact." (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66].) Defendants cite *Pacific Water Conditioning Assn. Inc.* v. *City Council* (1977) 73 Cal.App.3d 546 [140 Cal.Rptr. 812], which states that the fair argument standard is the appropriate standard for the agency making the determination; however, the standard for judicial review is whether there is substantial evidence in light of the entire record to support the decision of the agency. Thus, defendants and real party in interest contend that the court is to look for substantial evidence to support the county's decision to grant the site approval application.

■ Substantial evidence is the correct standard of judicial review; however, the standard is not simply to be applied to the final decision to grant the site approval. Rather, the standard must be applied to the county's decision regarding whether there was adequate evidence produced by plaintiffs so that a fair argument could be made that a significant environmental impact may result from the project. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1002 [165 Cal.Rptr. 514].)

The scope of judicial review for proceedings to attack an agency's decision under CEQA is set forth in Public Resources Code sections 21168 and 21168.5. Section 21168 provides that where the action to attack arose as a result of a proceeding in which a hearing is required by law 'and the attack

is on the grounds of noncompliance with CEQA, the action shall proceed in accordance with section 1094.5 of the Code of Civil Procedure but the court is only to determine whether the decision is supported by substantial evidence. Section 21168.5 provides that in all other actions, "the inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."

Plaintiffs contend that *Friends of "B" Street* and Public Resources Code section 21168.5 require the court to independently examine whether or not the evidence produced for the agency was adequate to make a fair argument of significant environmental impact. However, we read section 21168.5 to allow abuse of discretion to be established if the determination is not supported by substantial evidence, so that section 21168.5 adopts the substantial evidence test with respect to determinations of the public agency which do not fall within section 21168.

In any event, the distinction is immaterial in this case. The attack is on a decision made as a result of a proceeding in which a hearing is required by law (Pub. Resources Code, § 21082, San Bernardino County Code, § 84.0220, subd. (d)) and the attack is on the grounds of noncompliance with CEQA (§ 21167, subd. (b)). The applicable section is 21168. ■ Therefore, the court is to examine whether, in light of the whole record, there is substantial evidence to support the county's determination that it cannot be fairly argued that the dairy will have a significant environmental impact.

In its final decision in this case, the trial court decided against plaintiffs, first applying the substantial evidence test to the county's determination that the project should be approved. Thereafter, the court applied the *Friends of "B" Street* standard as interpreted by plaintiffs, and independently found that there was "not adequate evidence to constitute a fair argument that significant environmental effects would result." The court should have determined whether there was substantial evidence to support the county's decision that the evidence presented to it was insufficient to support a fair argument that the dairy may have a significant environmental impact. However, since the court came to the same conclusion as did the county, it is rather obvious that the court determined that there was substantial evidence to support the county's decision that the evidence was insufficient to support a fair argument of a significant impact.

Although common sense tells us a 900-cow dairy will have an effect on the environment, we reluctantly find, after a review of the whole record,

that substantial evidence does exist to support the county's determination that the evidence presented was insufficient to show that a fair argument could be made.

Plaintiffs' evidence before the county consisted mainly of testimony by other residents of the Newberry Springs area. Much of the testimony related to plaintiffs' fear the dairy would bring odors and flies, and would cause discomfort to plaintiffs. Plaintiff Selurnic was the source of these allegations but her testimony is not supported by any *evidence* of fly or odor concentration close to dairies. Plaintiffs presented a statement by a member of the planning commission from Chino that the people who lived there disliked the flies and odors near the dairies. However, no testimony of flies and odors was given by anyone who actually lived near the dairies, and no evidence was given that the homes in Newberry would be in the same proximity to the dairy as those in Chino. Plaintiffs also point to testimony by a dairyman from Chino that waste disposal was a problem there. However, there was no evidence that the conditions in Newberry Springs are similar. Rather, there was evidence that the dairy will be on a much larger piece of land so that the density of cows per acre will be less.

There is no real evidence in the record, other than plaintiffs' opinion, that odors or flies will cause substantial adverse effects on the physical conditions in the area, constituting a significant environmental impact under CEQA Guideline 15040. Thus, there was not sufficient evidence of odors to make a fair argument that the dairy would cause a significant environmental impact.

Plaintiffs also contend that the existence of serious public controversy was shown and that alone provides substantial evidence of the need for an EIR. The CEQA guidelines, however, state an EIR *should* be prepared when there is substantial public controversy. (Cal. Admin. Code, tit. 14, § 15084, subd. (c).) *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68, stated a serious public controversy made an EIR desirable, not that it created a *need* for one. The agency in this case could reasonably determine that the evidence presented by plaintiffs did not create a controversy serious enough to make an EIR desirable.

Plaintiffs also contended that the dairy will pollute the ground water of the area. In support of this contention, plaintiffs presented a letter from a University of California soil specialist which referred to a study in the Santa Ana basin. The letter states generally that in any confined or semiconfined basin, excessive nitrate loading will degrade ground water in a time related to soil porosity or depth of the water table.

Although one resident testified that Newberry Springs is located on top of a semiclosed basin, the letter was not shown to be relevant to the project in question, because there was no evidence that one dairy would cause excessive nitrate loading. Defendants offered testimony of a conversation with the author that two or three times the waste from a 900-cow dairy would still be reasonable and that this particular dairy should cause no significant environmental effect.

Defendants also presented evidence that the Lahontan Regional Water Quality Control Board waived waste discharge requirements. The initial study showed no water quality problems. Although Lahontan agreed further studies of dairy siting would be desirable, it found the density of cows per acre in this case acceptable. Defendants also presented a letter from a USDA soil conservationist which stated that, from the standpoint of soil characteristics the site may well be suited to a dairy. Although plaintiffs presented the recommendation of the Mojave Water Agency that an EIR be prepared, the agency itself stated it had neither the authority nor responsibility to recommend an EIR.

A Newberry Springs property owner testified for plaintiffs that heavy agriculture in the area would cause the water table to drop substantially and dry up the wells of the area. However, the county supervisor pointed out that the testimony was based on an example of 38 square miles of planted crops, not a 900-cow dairy on 160 acres.

Plaintiffs also contend that because testimony from other dairymen showed they plan to relocate in the Newberry Springs area, the cumulative effects of dairies must be considered. Since real party in interest's application is the first, and the county determined it would not have an effect on the environment, it is premature to consider what effects other dairies that might seek to locate in the area in the future would have.

■ The administrative agency is entitled to believe or disbelieve even uncontradicted testimony of a witness if the witness has an interest in the matter under dispute. (*Brentwood Assn. for No Drilling, Inc.* v. *City of Los Angeles* (1982) 134 Cal.App.3d 491, 504 [184 Cal.Rptr. 664].) ■ Under the substantial evidence standard of review, the court may not substitute its own judgment for that of the local agency. (*El Dorado Union High School Dist.* v. *City of Placerville* (1983) 144 Cal.App.3d 123, 130 [192 Cal.Rptr. 480].) The local agency in this case determined that plaintiffs did not present adequate evidence to make a fair argument that a significant environmental impact may result from the dairy. There is substantial evidence in light of the whole record to support that determination.

The judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.

A petition for a rehearing was denied January 27, 1984, and appellants' petition for a hearing by the Supreme Court was denied March 21, 1984. Mosk, J., was of the opinion that the petition should be granted.