[No. A029998. First Dist., Div. Two. July 22, 1986.]

CITY OF LIVERMORE, Plaintiff and Respondent, v.
LOCAL AGENCY FORMATION COMMISSION OF
ALAMEDA COUNTY, Defendant and Appellant.

534

**COUNSEL**

Richard J. Moore, County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Defendant and Appellant.

Thomas R. Curry, City Attorney, Mark I. Weinberger, Alletta d'A. Belin and Shute, Mihaly & Weinberger for Plaintiff and Respondent.

## OPINION

**SMITH, J.**—The City of Livermore sued the Alameda County Local Agency Formation Commission (LAFCO), seeking to prevent LAFCO from implementing the revised sphere of influence guidelines it adopted in 1983. Livermore claimed: (1) that under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21050 et seq.), LAFCO was required to prepare an environmental impact report (EIR) before it could adopt the new guidelines; and, (2) that the new guidelines conflicted with the Knox-Nisbet Act (Gov. Code, § 54773 et seq.).[1] The Alameda County Superior Court enjoined LAFCO from implementing the guideline revisions, ruling that LAFCO had to prepare an EIR to analyze the environmental impact of the revisions and to show that the revisions complied with the Knox-Nisbet Act. LAFCO appeals this ruling.

### BACKGROUND

The Knox-Nisbet Act created local agency formation commissions for the purposes of discouraging urban sprawl, encouraging orderly formation and development, and coordinating the needs of local governmental agencies. (Gov. Code, § 54774.) To accomplish these goals, Knox-Nisbet directed local agency formation commissions to develop and determine a "sphere of influence" for each local governmental agency within the county. A sphere of influence is a plan for the physical boundaries and service area of each local governmental agency. (*Ibid.*) Knox-Nisbet further directed local agency formation commissions to establish policies and exercise their powers in a way that would encourage and provide planned efficient urban development patterns while considering preservation of open-space lands. (Gov. Code, § 54774.5.)

In 1973, LAFCO enacted guidelines entitled: "Spheres of Influence: Policies, Guidelines, Criteria & Procedures of Alameda County." These

---

[1] In 1986, the Legislature renamed the Knox-Nisbet Act and renumbered its provisions. It is now called the Cortese-Knox Local Government Reorganization Act and is found beginning in section 56000 of the Government Code. The specific provisions of the Knox-Nisbet Act necessary to this appeal have not been changed by the new act. Throughout this appeal, we will refer, as the parties do in their briefs, to the originally numbered provisions of the Knox-Nisbet Act.

"guidelines" contained information to help guide LAFCO in its later determinations of particular spheres of influence for local governmental agencies. In 1983, LAFCO attempted to revise its guidelines. The revisions deleted the statement, "Existing and future urban development areas belong in cities." The revisions also added language that future incorporation of urban development outside an existing sphere of influence would be based on a county plan rather than a city plan. LAFCO characterized the revisions as an incorporation of the actual policies and procedures that had evolved since 1973.[2]

The proposed revisions were not originally accompanied by a review of their potential environmental impact. Subsequently, LAFCO conducted an initial study under CEQA to determine whether the revised guidelines would have a significant effect on the environment, and thus whether a full EIR would be needed. (See Cal. Admin. Code, tit. 14, § 15063.) LAFCO held hearings, at which Livermore objected to the guideline revisions. Livermore argued that an EIR was necessary and that the revisions would not promote orderly and efficient urban development. Livermore submitted the written comments of a planning consultant in support of its position.

Despite the evidence presented by Livermore and by other interested parties, LAFCO adopted a declaration that its guideline revisions would not have a significant effect on the environment. (See Pub. Resources Code, § 21064.) This negative declaration obviated the preparation of an EIR. LAFCO adopted the revised guidelines.

Livermore petitioned the Alameda County Superior Court for a writ of mandate ordering LAFCO to set aside the negative declaration and the revised guidelines. The court ruled that the negative declaration was incorrect and that an EIR was necessary. The court enjoined implementation of the new guidelines. LAFCO appeals.

---

[2]Underlying the controversy that developed about the guideline revisions was a specific project, Las Positas. Las Positas was a proposal for a new development to be located on unincorporated land close to Livermore's boundary. Livermore wanted Las Positas to be included within its sphere of influence but LAFCO refused to so amend Livermore's sphere of influence. Livermore contended that 1973 guidelines, under which LAFCO was operating, would not have approved Las Positas outside of Livermore's sphere of influence. Livermore believed that LAFCO's revision of those guidelines was an attempt to justify its refusal to amend Livermore's sphere of influence. However, Livermore did not join the Las Positas Development Company in this lawsuit. Livermore attacked only the implementation of LAFCO's guideline revisions.

LAFCO argued that Las Positas was an indispensable party, but the superior court disagreed.

The Alameda County voters failed to ratify the Las Positas development in a November 1984 election; Las Positas is no longer an existing proposal.

### Discussion

LAFCO contends that: (1) under CEQA, it did not have to prepare a full EIR; (2) the superior court ruled incorrectly that LAFCO had to prepare an EIR to determine its compliance with the Knox-Nisbet Act, and (3) Las Positas was an indispensable party to this litigation.

### I

### *The CEQA Issues*

#### Introduction

CEQA establishes the administrative procedure of an environmental impact report. So that the environmental effect of every public agency action is assessed and evaluated (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 74-75 [118 Cal.Rptr. 34, 529 P.2d 66]), EIRs must be prepared for all "projects" that "may have a significant effect on the environment." (Pub. Resources Code, § 21151.)

The superior court found that LAFCO should have prepared an EIR to assess the impact of its guideline revisions. LAFCO appeals, claiming that it does not have to prepare an EIR because its guideline revisions are not a "project" and that the revisions will not have a "significant effect on the environment."

#### *LAFCO's guideline revisions are a "project"*

 CEQA broadly defines projects as "[a]ctivities directly undertaken by any public agency." (Pub. Resources Code, § 21065.) CEQA then provides: "[T]his division shall apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits and the approval of tentative subdivision maps . . . ." (Pub. Resources Code, § 21080.) The definition of a project is further explained in the CEQA guidelines: "(a) Project means the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately, that is any of the following: [¶] (1) An activity directly undertaken by any public agency including but not limited to public works construction and related activities . . . enactment and amendment of zoning ordinances, and the adoption and amendment of local General Plans or elements thereof . . . [¶] (b) Project does not include: . . . (3) Continuing administrative or maintenance activ-

ities, such as . . . general policy and procedure making (except as they are applied to specific instances covered above) . . . ." (Cal. Admin. Code, tit. 14, § 15378.)

The language of CEQA and its guidelines includes all discretionary projects that have a direct or ultimate impact on the environment. ▪ In interpreting the language we are guided by our Supreme Court's statement in *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049], that "the Legislature intended [CEQA] to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (See also *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277-279 [118 Cal.Rptr. 249, 529 P.2d 1017] and fn. 16 ["project" includes anything that has impact on the environment].)

▪ LAFCO's guideline revisions fit within CEQA's broad definition of a project because they are a discretionary activity of a public agency that will unquestionably have an ultimate impact on the environment. The sphere of influence guidelines influence LAFCO decisions about development plans and future growth of cities and service areas. The guidelines play a part in determining whether growth will occur in unincorporated areas and whether agricultural land will be preserved or developed. They may change the focus of urban development by promoting county plans over city plans. These potential effects will certainly impact the environment. It is true that the precise effects are difficult to assess at this stage, but it is because impact is so easily foreseen that the revisions must be considered a project under CEQA.

To hold that the revisions are not a project, despite the fact that they will have a significant environmental impact, would result in an overly strict definition of CEQA which neither the language nor intent of the statute supports. Yet, LAFCO argues that the guideline revisions are excluded as a project under the CEQA guidelines and that the revisions are not a project because they are not a tangible physical activity and their effect is too remote.[3]

---

[3]LAFCO impliedly admitted that its revisions were a project when it conducted an initial threshold study to determine if a full EIR would be necessary. The initial threshold study must be done when there is a possibility that a "project" will have a significant effect on the environment. (Cal. Admin. Code, tit. 14, § 15063.) Although LAFCO claims here that it undertook the initial study only because of an "abundance of caution," its willingness to conduct the study at all indicates that the notion of a "project" is not as restrictive as LAFCO argues here.

LAFCO's guideline revisions are not excluded under the CEQA guidelines. What is excluded is "[c]ontinuing administrative or maintenance activities, such as purchases for supplies, personnel-related actions, emergency repairs to public service facilities, general policy and procedure making (except as they are applied to specific instances covered above)." (Cal. Admin. Code, tit. 14, § 15378.) The policymaking performed by LAFCO when it revises guidelines is far different than and distinguishable from the ministerial policymaking referred to in this CEQA guideline.

As to the argument that the revisions are not a tangible physical activity, CEQA and its guidelines focus on the ultimate impact of a project, not on whether the project is tangible or intangible. The CEQA regulations already include actions that are not physical activities. Enactment or amendment of zoning ordinances are specifically mentioned. (See Pub. Resources Code, § 21080; Cal. Admin. Code, tit. 14, § 15378.) Courts have analogized the actions specifically mentioned to other projects not specifically mentioned, for example, a regional transportation plan. (See *Edna Valley Assn.* v. *San Luis Obispo County etc. Coordinating Council* (1977) 67 Cal.App.3d 444, 447-448 [136 Cal.Rptr. 665].) As the court stated in *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 529-532 [160 Cal.Rptr. 907], the amendment of a general plan is a project because "general plans now embody fundamental land use decisions that guide the future growth and development of cities and counties." (See also *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, 277-278, fn. 16 ["governmental paper shuffling" that results in impact on the environment is a project].)

Just as the amendment of a general plan will influence the future growth and development of cities, so too will the sphere of influence guideline revisions have such an effect. These guideline revisions, which may promote urbanization in the county rather than in existing cities, may have an even greater impact than the amendment of one general plan. The potential impact of the guideline revisions necessitates that the revisions be considered a "project" under CEQA.

LAFCO, relying on *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 665 [124 Cal.Rptr. 635], argues that the revisions are not a project. However, the situation in *Simi Valley* was different from the situation here. In *Simi Valley,* the Ventura County LAFCO approved a detachment of undeveloped land from a recreation and park district. The court held that the detachment was not a project, because the land to be detached was within the zoning jurisdiction of the county both before and after the detachment, and policy regarding present and future land use and public services had already been determined by a single

county general plan. (*Id.*, at p. 666.) The court's discussion focused on whether a detachment or annexation involved a policy choice between two competing plans or zoning schemes. (*Id.*, at pp. 664-666; see also *People* ex rel. *Younger* v. *Agency Formation Com.* (1978) 81 Cal.App.3d 464, 478 [146 Cal.Rptr. 400].)

*Simi Valley* involved a LAFCO decision regarding one detachment, a LAFCO decision that was not a choice between conflicting plans or schemes. The LAFCO action here was not one plan, nor a slight reorganization in administration, but a major policy shift that would affect land use throughout the entire region. LAFCO cannot extend the holding of *Simi Valley* to cover this situation. (*Simi Valley* v. *Local Agency Formation Com., supra,* 51 Cal.App.3d 648, 665.)

*Substantial evidence does not support LAFCO's conclusion that the guideline revisions will not have a significant environmental impact*

We have determined that the guideline revisions are a project because they will have an ultimate impact on the environment. ■ The next CEQA inquiry is whether the impact is "significant" enough to require preparation of an EIR. (Pub. Resources Code, § 21100.) ■ If "it can be fairly argued on the basis of substantial evidence that the project may have significant environmental impact," the agency must prepare an EIR. (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d 68, 74-75; see also Cal. Admin. Code, tit. 14, § 15064(g)(1).)

Deciding whether a fair argument can be made requires the agency to weigh the evidence on both sides of the question. If there is substantial evidence of a significant environmental impact, evidence to the contrary does not dispense with the need for an EIR when it still can be "fairly argued" that the project may have a significant impact. (*Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1002 [165 Cal.Rptr. 514].)

Our standard of review of the agency's decision is set out in Public Resources Code section 21168: ". . . the court shall not exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in light of the whole record." (See also Code Civ. Proc., § 1094.5.) ■ Thus, contrary to Livermore's claim that our standard of review is to determine whether there is substantial evidence that an EIR is required, the applicable code section requires that we determine whether the agency's act or decision is supported by substantial evidence in light of the whole record. (*Newberry Springs*

*Water Assn.* v. *County of San Bernardino* (1984) 150 Cal.App. 3d 740, 748 [198 Cal.Rptr. 100]; *Citizen's Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 172-173 [217 Cal.Rptr. 893].)

The "act or decision" we review here is not the decision that the project may or may not have a significant environmental impact, but the decision that it can or cannot be *fairly argued* that the project may have a significant enrironmental impact. Because our focus is on the fair argument decision, we must assess both the evidence in favor of the significant environmental impact and the evidence to the contrary—only then can we properly decide if the agency's conclusion regarding the fair argument question is supported by substantial evidence in light of the whole record.[4]

LAFCO concluded that not even a fair argument could be made that the project may have a significant environmental impact. Substantial evidence does not support that conclusion.

The evidence supporting the argument that the project may have a significant environmental impact is formidable. Livermore submitted to LAFCO a report by a planning consultant who concluded that the revisions would have a substantial effect on the environment. The consultant argued that the shift from reliance on city plans to reliance on county plans in determining urbanization changed a basic presumption that urbanization would occur within existing cities, and lowered the threshold for urbanization in unincorporated areas, including areas that were previously agricultural preserves. The report cited a number of potential effects on the environment resulting from this change in policy: (1) greater consumption of land to accommodate the same level of population and economic activity, (2) deterioration of

---

[4]The standard of review used by the court in *Pacific Water Conditioning Assn., Inc.* v. *City Council* (1977) 73 Cal.App.3d 546 [140 Cal.Rptr. 812], has led to confusion over the proper appellate standard of review. *Pacific Water Conditioning* stated that the review standard is "whether there is any substantial evidence in light of the entire record to support the decision of the agency." (*Id.,* at p. 558.) The *Pacific Water Conditioning* case went on, however, to look only at the evidence that the project would not have a significant environmental impact, without assessing both sides of the fair argument. The court in *Friends of "B" Street* v. *City of Hayward, supra,* 106 Cal.App.3d at page 1002, noted that while the standard proposed in *Pacific Water Conditioning* was correct, the application of that standard was incorrect because *Pacific Water Conditioning* looked at only one side of the evidence. The *"B" Street* court stated: "It was not enough for the [*Pacific Water Conditioning*] court to determine that the agency was presented with substantial evidence that the proposed ordinance would not have a significant environmental impact. The court should have assessed the evidence to the contrary to determine whether it could be *fairly argued* that the ordinance might have such an impact. Only in this manner can a reviewing court determine whether an agency's decision to authorize a negative declaration was supported by substantial evidence in light of the whole record." (106 Cal.App.3d at p. 1002.)

existing cities, (3) promotion of growth in unincorporated areas to pay obligations underwriting the services provided by a new urban service area, (4) inability of existing cities to meet bond obligations due to the direction of growth away from these cities, (5) increased net travel resulting in greater energy consumption and pollution, (6) loss of open space, and (7) conversion of agricultural land to nonagricultural uses, reducing the availability of land productive for agriculture and the number of scenic areas.

LAFCO also received into evidence letters from the Castro Valley Municipal Advisory Council, the City of Fremont, the City of Newark, and the League of Women Voters, each of which discussed the effects of the guideline revisions on their communities. This evidence certainly supports a fair argument that the project may have a significant environmental impact.

The evidence against this fair argument is weak. LAFCO introduced a resolution it adopted in 1984, which states in part: "The Commission does not interpret or construe the revised guidelines to be a 'shift away from policies favoring urban development within municipalities to policies that allow and encourage urban development outside of existing urban centers and a shift away from projecting prime agricultural land from urban development' and does not consider the revised guidelines to be a significant or substantial change in policy. . . ." This conclusory resolution, which does not contain any evidence or factual information, does not constitute substantial evidence. Apart from LAFCO's blanket conclusion in resolution form, we have only LAFCO's direct attack on the reliability of the planning consultant's report and LAFCO's unsupported assertions that the revisions would not substantially change the previous guidelines' policy. This evidence does not refute the evidence supporting the fair argument that the project may have a significant environmental impact. Therefore, LAFCO's conclusion to the contrary is not supported by substantial evidence in light of the whole record.

Because LAFCO's guideline revisions were a project that could arguably have a significant effect on the environment, we conclude that LAFCO's negative declaration must be set aside and that LAFCO must prepare an EIR. This seems to us the most reasonable course, taking into account CEQA's policy to afford the fullest possible protection to the environment. Local agency formation commissions were born out of a need to move toward well-planned, efficient and ordered urban development and to move away from the irrational urban sprawl that has plagued many California urban areas. Yet, the LAFCO deletion of the guideline mandate that urban development belongs in cities opens the door to "leap frog" pockets of development, which in turn makes the rendering of city services expensive

and inefficient. This change also places in jeopardy open space and agricultural lands surrounding existing urbanized areas. The potential impact of the guideline revisions on the environment is great; we see an advantage to assessing this impact early and in a cumulative way, instead of waiting and assessing the impact project by project.

We, therefore, conclude that LAFCO must prepare an EIR to explore the environmental impact of the guideline revisions.

II

*Knox-Nisbet Act*

■ In its statement of decision, the superior court commented: "LAF-CO has not demonstrated that the guidelines are in compliance with the Knox-Nisbet Act. Preparation of the EIR . . . should be directed towards assessing the impacts of the guideline revisions and assuring that they comply with the Knox-Nisbet Act." LAFCO claims that the trial court erred in ruling that the EIR needs to demonstrate compliance with Knox-Nisbet because the burden is not on an agency to show compliance with its authorizing act.

While it is clear that all public agencies, including local agency formation commissions, must prepare EIRs, the factor that triggers preparation is a significant environmental impact as defined under CEQA. By their terms, neither the Knox-Nisbet Act nor CEQA requires that an EIR be prepared to show compliance with Knox-Nisbet.

It is true that an EIR might contain information relevant to determining whether the revisions comply with Knox-Nisbet. But requiring LAFCO to prepare an EIR to prove that the revisions do not violate Knox-Nisbet is not required by either CEQA or Knox-Nisbet. LAFCO does not have the burden of showing Knox-Nisbet compliance. Rather, its actions are presumed to comply with Knox-Nisbet because LAFCO was formed to implement Knox-Nisbet. ■ Only if a local agency formation commission's interpretation of Knox-Nisbet is "arbitrary, capricious, or entirely lacking in evidentiary support" (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 383 [146 Cal.Rptr. 892]), will that interpretation be reversed by a court. ■ Placing the burden of showing compliance with Knox-Nisbet on the agency itself would go against the rule that "reasonable constructions by administrative agencies of their statutory mandates are entitled to great weight and should be respected by courts. . . ." (*Perley* v.

*Board of Supervisors* (1982) 137 Cal.App.3d 424, 431 [187 Cal.Rptr. 53].) We thus reverse that part of the superior court's decision that held that LAFCO must show compliance with Knox-Nisbet in its EIR.

Livermore claims that even if the superior court erred in requiring an EIR to show Knox-Nisbet compliance, it has still demonstrated that LAFCO's guideline revisions do not comply with Knox-Nisbet. Livermore argues that Knox-Nisbet requires urbanization within existing cities while the guideline revisions encourage development in unincorporated areas; that Knox-Nisbet was enacted to stop the proliferation of special districts while the guideline revisions accelerate the creation of special districts; and that the guideline revisions do not implement Knox-Nisbet's preference for preserving agricultural land or for following city plans in determining development.

It is not inconceivable that the guideline revisions would have some of the effects Livermore suggests. The guideline revisions might indeed change LAFCO's focus from urbanization within cities to encouragement of development in unincorporated areas; this change in focus might lead to the proliferation of special districts and the loss of prime agricultural land. These changes, if they occurred, or if they could be documented, would indeed violate Knox-Nisbet. However, here we have only Livermore's theoretical assertions of violations, unsupported by any documentation or by a record. We have no specific set of circumstances and no LAFCO action that could be measured against the dictates of Knox-Nisbet. Further, there is no statutory or decisional basis from which to rule as a matter of law that the proposed guidelines violate Knox-Nisbet. A local agency formation commission's action could conceivably violate Knox-Nisbet, but in this case we simply do not have enough information to make that determination.

## III

### *Indispensable Party*

LAFCO contends that the court below erred in finding that the Las Positas Land Company was not an indispensable party. An indispensable party is defined as one "so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest . . . ." (Code Civ. Proc., § 389, subd. (a)(2)(i).) As a practical matter, the interest of Las Positas on appeal is moot because the Las Positas proposal was rejected by the Alameda County electorate in November 1984.

Furthermore, Las Positas could not have suffered the prejudice necessary to make it an indispensable party. Enjoining the revised guidelines did not involve the cancellation or suspension of any proposals or permits of Las Positas. This case is different from *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495 [157 Cal.Rptr. 190], where the relief sought would have resulted in the setting aside of a permit which had previously been granted to a specific developer. (*Id.,* at p. 501.) The relief sought by Livermore would have had no direct impact on Las Positas. Las Positas had the same interest in the guideline revisions as any other potential developer (see *Camp* v. *Board of Supervisors* (1981) 123 Cal.App.3d 334, 354 [176 Cal.Rptr. 620]), and thus was not indispensable to this litigation.

## DISPOSITION

We affirm the judgment of the superior court only insofar as it issues a writ of mandate commanding LAFCO to set aside its negative declaration and its approval of the guideline revisions. We reverse that part of the judgment requiring LAFCO to show Knox-Nisbet compliance in its EIR. Each party to bear its own costs on appeal.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 21, 1986.