[No. D023148. Fourth Dist., Div. One. Feb. 9, 1996.]

SAVE OUR BAY, INC., Plaintiff and Appellant, v.
SAN DIEGO UNIFIED PORT DISTRICT, Defendant and Respondent;
CITY OF NATIONAL CITY, Real Party in Interest and Respondent.

688

COUNSEL

Craig A. Sherman for Plaintiff and Appellant.

Gatzke, Mispagel & Dillon, Michael Scott Gatzke, Lori D. Ballance, Linda K. Harter and George H. Eiser III for Defendant and Respondent and for Real Party in Interest and Respondent.

OPINION

NARES, J.—In a mandate proceeding challenging the adequacy of an environmental impact report (EIR) for a project (see Pub. Resources Code, § 21168; Code Civ. Proc.,[1] § 1094.5), is the landowner whose land must be acquired to complete the project an indispensable party where the only other parties are (1) the third party petitioner, the lead agency respondent which certified the adequacy of the EIR, and (2) the named real party in interest, the city in which the project is located?

On the bases the landowner was an indispensable party and the limitations period for bringing the landowner into the case had run (Pub. Resources Code, § 21167, subds. (b) and (c)), the trial court granted summary judgment for the lead agency, the San Diego Unified Port District (District), and against the petitioner, Save Our Bay, Inc.

Save Our Bay appeals, contending:

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

(1) The facts and competent evidence indicate the nonjoined party, landowner Chula Vista Capital, has no rights or interests affected except in a tenuous and speculative manner; there are no rights "directly affected" to make Chula Vista Capital a necessary party pursuant to section 389, subdivision (a);

(2) The equitable factors expressed in section 389, subdivision (b) mandate that this case not be dismissed because Save Our Bay will be harshly prejudiced and will forever lose its cause of action, whereas other joined and nonjoined parties will realize no prejudice if this case is heard on the merits; and

(3) Public policy and statutory intent dictate preventing the harsh results and contravention of the purposes of the statutes resulting from dismissal of lawsuits.

We conclude under the circumstances here, where the District is neither a developer nor (obviously) the landowner, it cannot be expected to represent the interests of landowner Chula Vista Capital, thus making Chula Vista Capital an indispensable party to the proceeding. There is no question that it is too late to file a proceeding bringing the landowner into the case. Accordingly, we affirm the summary judgment.

FACTS

In August 1988, Chula Vista Capital, a limited partnership, purchased 22.6 acres of land located in the City of National City. In March 1993, the District began preparation of an EIR, described in part as EIR 139, for a project involving construction and operation of a recreational marina and related facilities (Marina Project). The total acreage of the Marina Project was approximately 24 acres, consisting of District tidelands and private upland property of Chula Vista Capital. Only the southernmost 7.4 acres of the Chula Vista Capital property would actually be developed as part of the property. In this regard, the EIR states, "The eastern half of the site, about 7.4 acres, is privately owned undeveloped uplands." (EIR, par. 3, Site Description, p. 1-2.) At other points in the EIR there are statements about the need to acquire the property for the project, as follows: "Implementation of the project may require acquisition by the Port District of some or all of the 22.6 acres of private property east of the historic high tide line." (EIR, par. 3.2, Project Location, p. 3-2.) "The Port District may acquire some or all of 22.6 acres of private property east of the historic high-tide line. Of this 22.6 acres, 7.4 would be used as part of project development with no development plans for the remainder." (EIR, par. 4, Property Acquisition, p. 3-9.)

"The proposed project includes the potential acquisition of all or part of 22.6 acres of private land (the Barkett property).[2] Of this land, 7.4 acres comprising the eastern half of the project site would be developed for marina use. No development has been proposed for the remaining 15.2 acres, and any subsequent development proposal would require additional environmental review." (EIR, par. 1(a) Existing Land Use, p. 5-1.)

As of January 1994, Save Our Bay was aware of the fact the project might require use of the property in question. Letters of January 23 and 24, 1994, written by Save Our Bay to the District commenting on the draft EIR contain the statements, "This does not include the $5.7 million to be spent for acquiring Barkett land," (EIR, p. 9-52) and, "The dollar figures do not include the $5.7 million to be spent to buy the Barkett property which is necessary to allow the SDUPD to have complete control of the National City Marina Project" (EIR, p. 9-61).

On March 29, 1994, having circulated the draft EIR as lead agency for the project and having resolved to amend the port master plan, the District certified the EIR. The next day the District filed a notice of determination with the county clerk, triggering the 30-day statute of limitations under the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21167, subds. (b) and (c).)

Also on March 29, 1994, the District adopted an ordinance authorizing the purchase of the Chula Vista Capital acreage for not to exceed $5.7 million. In April 1994, the District and Chula Vista Capital entered into negotiations regarding the purchase and sale of the property for a price of $5.7 million. In this connection, an unexecuted "draft" of escrow instructions was prepared. The draft contains a provision giving the District "the absolute right to cancel escrow" if a legal challenge to the project is filed under CEQA.

On April 28, 1994, Save Our Bay filed its petition for writ of mandate seeking to set aside the District's decision about the project. As noted, the petition names only the District as respondent and the City of National City as real party in interest. The petition does not name as a party either Chula Vista Capital or any fictitiously named Does.

On August 22, 1994, the District filed its motion for summary judgment on the ground Save Our Bay failed to join the indispensable party, Chula Vista Capital, before expiration of the statute of limitations. On October 21, 1994, the trial court granted the motion, stating in part: "[T]he important

²William J. Barkett is a general partner of Chula Vista Capital.

thing is that the owner has to be a party to this action because in the event there is a court challenge under the law, the owner of the property has a real interest in seeing that that challenge fail because if the challenge succeeds, their property value is infinitely diminished, and the [District] could care less about that property at that point and wouldn't buy it."[3]

The trial court also observed that although Save Our Bay argued the District was, in effect, the developer of the property and could adequately protect the rights of the owner, Chula Vista Capital, in the proceeding, there was no evidence submitted on this issue.

Thus, the trial court granted the motion for summary judgment.

## DISCUSSION

### *Standard of Review*

The sole issue in this case is whether Chula Vista Capital is an indispensable party under statutory definitions in section 389. The material facts are undisputed. ■ Accordingly, we apply the rule we set forth in *Cox* v. *County of San Diego* (1991) 233 Cal.App.3d 300, 306 [284 Cal.Rptr. 266], "where the material facts are undisputed and the decision of the trial court turns on statutory interpretation, such interpretation is a matter of law subject to this court's de novo review. [Citation.]" (See also *M.B.* v. *City of San Diego* (1991) 233 Cal.App.3d 699, 703-704 [284 Cal.Rptr. 555].)

■ The controlling test for determining whether a person is an indispensable party is, "Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party. (*Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 522 [106 P.2d 879].)" (*Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 501 [157 Cal.Rptr. 190] (*Sierra Club*).) More recently, the same rule is stated, "A person is an indispensable party if his or her rights must necessarily be affected by the judgment. (*Hartman Ranch Co.* v. *Associated Oil Co.* (1937)

---

[3]Ralph T. Hicks, environmental management coordinator for the District, declared that as a result of this action, the District has never finalized the draft escrow instructions for the purchase of the Chula Vista Capital property. Hicks further declared: "If [Save Our Bay] prevails in this action, the District may not purchase the subject property from Chula Vista Capital. Therefore, Chula Vista Capital's interest will be directly affected by this action, and its ability to protect that interest may be impaired or impeded by the disposition of the action. Neither the District nor National City can be expected to represent the interests of Chula Vista Capital in this action."

10 Cal.2d 232, 262 [73 P.2d 1163]; [*Sierra Club, supra*, 95 Cal.App.3d at p. 501].)" (*County of Alameda* v. *State Bd. of Control* (1993) 14 Cal.App.4th 1096, 1105 [18 Cal.Rptr.2d 487].)

Applying these rules in a de novo review of the matter under the applicable statutory and decisional law, we determine Chula Vista Capital is indeed an indispensable party which was required to be joined. Since it is too late under the 30-day statute of limitations of Public Resources Code section 21167, subdivisions (b) and (c), we affirm the summary judgment.

## I

■ Save Our Bay contends the facts and competent evidence indicate the nonjoined party, landowner Chula Vista Capital, has no rights or interests affected except in a tenuous and speculative manner; there are no rights "directly affected" to make Chula Vista Capital a necessary party pursuant to section 389, subdivision (a). This argument is unacceptable on its face.

■ A rule fundamental to the analysis of the issue is that "[a]n indispensable party is not bound by a judgment in an action in which he was not joined." (*Greif* v. *Dullea* (1944) 66 Cal.App.2d 986, 995 [153 P.2d 581]; see also *Inland Counties Regional Center, Inc.* v. *Office of Administrative Hearings* (1987) 193 Cal.App.3d 700, 706 [238 Cal.Rptr. 422].) Thus, a judgment in an action not naming an indispensable party, for example, an action seeking to stop a development, might well be inadequate because it is subject to later collateral attack by the nonjoined indispensable party. (See *Sierra Club, supra*, 95 Cal.App.3d at p. 502.) In this connection, the rule is: "Failure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand. It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined. [Citation.]" (*Id.* at p. 500.)

In *Sierra Club*, a permit authorizing a project had been issued to a developer that was not named in the proceeding brought to set aside the permit. The trial and appellate courts held the developer was an indispensable party whose interests would be directly affected and injured if the permit were set aside. (*Sierra Club, supra*, 95 Cal.App.3d at p. 501.) Since the applicable statute of limitations for challenging the permit had run by the time the plaintiff sought to bring the developer into the case, dismissal of the proceeding was upheld. (*Id.* at p. 502.) *Sierra Club* is described in part as

follows: "Since the Sierra Club was seeking to set aside the developer's permit, it was obvious that such relief 'would directly affect, and undoubtedly injure, [the developer's] interests.' [*Sierra Club, supra,* 95 Cal.App.3d at p. 501.] The court further reasoned that the developer met all of the criteria for compulsive joinder under Code of Civil Procedure section 389, subdivision (a)[4] because a disposition in his absence could impair his ability to protect his interest in the action, and his right to collaterally attack an adverse judgment exposed the commissions to the risk of incurring inconsistent obligations. ([95 Cal.App.3d at p. 501.]) Since the developer could not be joined because the statute had run (*id.* at p. 502), and a judgment in favor of the Sierra Club would have prejudiced the developer and been subject to collateral attack, the court concluded that dismissal was warranted under the factors enumerated in Code of Civil Procedure section 389, subdivision (b).[5]" (*Beresford Neighborhood Assn.* v. *City of San Mateo* (1989) 207 Cal.App.3d 1180, 1188 [255 Cal.Rptr. 434] (*Beresford*).)

*Beresford,* like *Sierra Club,* involved a nonjoined developer in a suit to set aside zoning and planning approvals by a city for a specific senior citizens housing project. The city did not own the site in question, but had a right to purchase it from the owner as well as city council authority to do so with the use of redevelopment agency funds. The developer had successfully applied to the city for certification of an EIR for the project, various permit approvals, a zoning variance and general plan amendments. The city was in the process of negotiating an agreement to transfer the site to the developer. (*Beresford, supra,* 207 Cal.App.3d at p. 1185.)

Under these circumstances, the court held the developer was an indispensable party, rejecting the plaintiffs' claims that since the developer had not

---

[4]"This subdivision reads as follows: '(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.' "

[5]"This subdivision reads as follows: '(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.' "

concluded an agreement to acquire the site when the zoning for the project was approved, the developer was a " 'mere speculator' " with no " 'vested rights' " in the project. (*Beresford, supra,* 207 Cal.App.3d at p. 1189.) The court observed the developer "has undertaken the efforts necessary to secure such approvals . . . has a substantial stake in the project by virtue of those efforts, and it would obviously be prejudiced by a successful challenge to the city's zoning decisions." (*Ibid.*) Further, the plaintiffs had admitted in another context that without the rezoning there was no project. (*Ibid.*) Accordingly, as to the zoning claims the court held the developer was an indispensable party and the time-barred attempt of plaintiffs to join the developer warranted dismissal of the action.[6] (*Id.* at p. 1189.)

*Beresford* points out that there is a distinction to be made where the legal attack is on a specific development plan as distinguished from a plan, such as a general plan, which will be applied equally to all similarly situated persons. The rule is that "[u]nless a challenge is aimed at a 'specific developer,' the developer is not exposed to 'the prejudice necessary to make it an indispensable party.' " (*Beresford, supra,* 207 Cal.App.3d at p. 1189, quoting *City of Livermore* v. *Local Agency Formation Com.* (1986) 184 Cal.App.3d 531, 545 [230 Cal.Rptr. 867].)

Another significant point of *Beresford,* applicable here, is its distinction of *Citizens Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151 [217 Cal.Rptr. 893] (*Citizens*), of which the court said: "The court held that the owner was not an indispensable party because *the developer had been joined and had 'ably argued' on behalf of the owner's interests. (Id.* at p. 161.) *Here,* although title to the site may pass through the city, *the city is neither the owner nor the developer and it cannot be expected to represent the interests of either of those entities." (Beresford, supra,* 207 Cal.App.3d at p. 1189, italics added.)

Likewise, in this case, the District cannot be expected to represent the interests of Chula Vista Capital in the approval of the EIR for *this* specific plan. The District is only interested in placing the marina on this site, not in representing the concerns of any particular owner of that site. There is an indication in both the unexecuted draft escrow instructions with the clause permitting the District to cancel escrow in the event of a suit like this one, as well as in the fact the sale was not completed after this suit was filed, that

---

[6]With respect to the limitations period expiration for the plaintiffs' challenge to the city's approval of the EIR for the project in *Beresford,* plaintiffs conceded they were barred under the 30-day rule of Public Resources Code section 21167, subdivision (c). (*Beresford, supra,* 207 Cal.App.3d at p. 1186.)

the District "cannot be expected to represent the [owner's] interests" (*Beresford, supra,* 207 Cal.App.3d at p. 1189), and in fact is not doing so. The uncontroverted declaration of Hicks (fn. 3, *ante*) fully supports this conclusion, framed by the trial court as "if the challenge succeeds, [Chula Vista Capital's] property value is infinitely diminished, and the [District] could care less about that property at that point and wouldn't buy it."

In a vein similar to the argument made in *Beresford* that the developer was a " 'mere speculator' " with no " 'vested rights' " (*Beresford, supra,* 207 Cal.App.3d at p. 1189), Save Our Bay argues: "Chula Vista Capital has no vested right to protect. Chula Vista Capital has merely a remote interest in seeing the Marina Project succeed. Chula Vista Capital has had no involvement with the inception, preparation, or certification of the EIR. Chula Vista Capital has no ability to defend or assist in upholding the EIR. Instead, Chula Vista Capital is merely an interested onlooker who would like to see things go its way so it can profit on a separate land sale deal."

What we said in the last full paragraph on page 695 answers the claim Chula Vista Capital has merely a remote interest as an interested onlooker. With respect to Save Our Bay's claim of no vested right, the law does not impose any such requirement. *Inland Counties Regional Center, Inc.* v. *Office of Administrative Hearings, supra,* 193 Cal.App.3d 700, on which Save Our Bay relies, contains no such requirement and otherwise has no application here. Rather, as we have stated, the test is whether the person is one whose rights must necessarily be affected by the judgment in the proceeding. (*Sierra Club, supra,* 95 Cal.App.3d at p. 501.)

It is clear that Chula Vista Capital was not involved in the proposed project to the extent of the developer in *Beresford.* However, Chula Vista Capital obviously was involved in negotiations with the District that led to enactment of the ordinance authorizing the District to purchase the property for a specific price. This involvement also led to the drafting of a document which, though unexecuted, reflected the same price terms and demonstrated intent of the parties to terminate any purchase and sale transaction if a suit like this were filed. We note, too, that the January 1994 letters from Save Our Bay to the District demonstrate clearly Save Our Bay had knowledge of the terms of the proposed sale and that it was necessary for completion of the project.[7] These aspects of the record define an interest in completion of the project held by Chula Vista Capital that necessarily was to be affected, and possibly injured, by a judgment in the proceeding.

---

[7] If there was to be a Marina Project as contemplated by the EIR under consideration, the site was required to be purchased, and Save Our Bay knew it.

We reject out of hand the attempts by Save Our Bay to couch the acquisition with some uncertainty as to its necessity under the facts and in the context of this case. For example, Save Our Bay makes statements such as, "it is a mere possibility, not a legal interest or right,

## II

In order to fit this case within the ruling of *Citizens, supra,* 172 Cal.App.3d 151, Save Our Bay argues, "The Port District, as the project applicant and developer will defend this litigation to uphold the EIR in the same manner an owner would, in order to prevent the project from failing." Moreover, Save Our Bay asserts that "because Chula Vista Capital has not been involved in the conception, design, environmental review or agency permit process, there is little or nothing it could do to defend or contribute to the defense of this action." Save Our Bay continues: "As the lead agency, the Port District should know the name of the developer. Because *all matters of doubt are to be resolved in favor of the opposing party,* the *failure of the Respondent to identify the project developer* and/or proponent *requires the Court to accept the Petitioner's allegations as true. The Port District is the developer,* as well as the lead agency, and therefore *only the Port District is in a position to defend this action,* and Chula Vista Capital is not indispensable." (Underscored italics added.)

As support for its claim the District is the developer, Save Our Bay cites the first three pages of chapter 1 of the EIR, entitled, "Project Summary, Major Environmental Consequences, and Alternatives." While it is true that various forms of the word "develop" are used in these pages,[8] they do not furnish the slightest substance to the conclusion the District is the developer. The reference is to the project, the subject of the EIR, and the result to be achieved by the project, i.e., a development. It is a generic use of the word having no bearing on the District's role in bringing about the result except as the lead agency required under CEQA to describe the project, its environmental consequences and alternatives.

Moreover, the statement in the EIR that before construction of the proposed project there would have to be approval of a master plan amendment and a coastal development permit, and this "approval would be followed by completion of the design plans and the selection of a construction contractor

---

that the Port District may decide to purchase the land owned by Chula Vista Capital . . . the 'draft' escrow instructions have no legal effect and creates [*sic*] no vested rights or interest in Chula Vista Capital . . . [and (we observe, inconsistently)] Chula Vista Capital has bargained away its rights to sell the land if a CEQA suit is filed . . . ."

[8]The EIR uses the language "[t]o develop a 200- to 250-slip marina . . . [and] [¶] [t]o aid in implementing the expressed policies and stated General Plan objectives of National City for development of a marina in this location to serve as the focal point for recreational and tourist commercial development," both with reference to an introductory clause stating these are some of the objectives of the proposed project. (EIR, p. 1-1.)

Also included in the EIR pages Save Our Bay cites are several other uses of "development" or "developed" in the generic sense, such as "development according to land use designations," and "[t]he eastern part . . . would be developed . . . ." (EIR, p. 1-3.)

or contractors by the Board," does not raise any inference that the District is a developer.

In other words, as the trial court observed, there simply is no evidentiary support for the proposition the District is a developer. Nor do the cited pages of the EIR raise a triable issue of material fact concerning the District's status as a developer.

Since there is no basis for viewing the District as a developer, the *Citizens* case determination that the joined developer adequately could represent the interests of the nonjoined owner, thus removing the owner from the category of necessary or indispensable party, has no application to this case. (See *Citizens*, *supra*, 172 Cal.App.3d at p. 161.) A second point of demarcation of this case from *Citizens* is that the developer there "had an option to purchase the subject property from the owner and was in escrow, [causing] its interests [to be] essentially the same as if it had been the owner for the purposes of this litigation." (*Ibid.*) No such option or identity of interest is present here as between the District and Chula Vista Capital. It should be noted that the quoted statement in *Citizens* represents clear recognition of the owner's protectable interest in seeing the project through, as well as the need to have that interest represented in the CEQA, planning and zoning litigation there involved.

We conclude that the interests of Chula Vista Capital in the litigation involved here were not represented and that those interests would be affected and possibly injured by the judgment. Thus, Chula Vista Capital is an indispensable party.

## III

■ Save Our Bay contends the equitable factors expressed in section 389, subdivision (b) (see fn. 5, *ante*) mandate that this case not be dismissed because it will be harshly prejudiced and will forever lose its cause of action, whereas other joined and nonjoined parties will realize no prejudice if this case is heard on its merits. Save Our Bay also argues public policy and statutory intent dictate preventing harsh results of suit dismissal.

In the context of an assertion of equitable tolling, *Sierra Club*, *supra*, 95 Cal.App.3d at page 503, stated as follows: "Plaintiff also argues that the statute of limitations was equitably tolled by the filing of the original mandamus petition against the regional commission and the commission. Why? Because, argues plaintiff, it will have no remedy if dismissal of the action is upheld. Plaintiff also claims that [the nonjoined developer] was in

no way prejudiced by being named as a party within 40 days after the filing of the original petition. These contentions are without merit."

In resolving this issue *Sierra Club* placed considerable weight on the fact Sierra Club's attorneys were involved in another, related case which made them aware it was appropriate to name the developer in the suit. (*Sierra Club, supra,* 95 Cal.App.3d at p. 504.) A similar awareness on the part of Save Our Bay exists here as evidenced by its January 1994 letters to the District.

Considering the factors in section 389, subdivision (b), first, we have already seen that granting relief to Save Our Bay in the proceeding without participation by Chula Vista Capital would be very prejudicial in terms of the loss of a sale. Second, we are not presented with any suggestion of a way in which such a judgment could be shaped to lessen or avoid prejudice to Chula Vista Capital. Actually, in this regard, Save Our Bay argues that any such decision that affects the value of Chula Vista Capital "is merely incidental," thus suggesting no shaping of the judgment is required. On the third factor in section 389, subdivision (b), we have seen that Chula Vista Capital would not be bound by a judgment and could collaterally attack it, thus making inadequate a judgment rendered in its absence. The last factor, whether Save Our Bay will have an adequate remedy, is clearly answered in the negative. However, that is an unavoidable result in any case where an indispensable party is not joined and the limitations period has run.

We conclude the equitable considerations of section 389, subdivision (b), do not furnish a basis for refraining from dismissing the suit. Nor do any policy considerations underlying the rules for joinder of parties in section 389 and the summary judgment rules of section 437c call for a different result. The statutory and decisional law, properly applied, call for a dismissal which, notwithstanding Save Our Bay's argument to the contrary, does not amount to "converting a rule of convenience into a weapon to thwart justice."

Save Our Bay, aware of Chula Vista Capital's interest in the project approval process as an owner whose land was required to complete the project, was required to join Chula Vista Capital in the proceeding challenging the adequacy of the EIR. Since Save Our Bay failed to join Chula Vista Capital as a party within the applicable statute of limitations, it was appropriate to dismiss the action.

## DISPOSITION

Judgment affirmed.

Work, Acting P. J., and Huffman, J., concurred.