[No. C044541. Third Dist. Sept. 14, 2004.]

EL DORADO COUNTY TAXPAYERS FOR QUALITY GROWTH et al.,
Plaintiffs and Appellants, v.
COUNTY OF EL DORADO et al., Defendants and Respondents;
COOL CAVE QUARRY, INC., Real Party in Interest and Respondent.

## COUNSEL

Law Offices of Donald B. Mooney, Donald B. Mooney and Shawnee Sharoody for Plaintiffs and Appellants.

Ed Knapp, County Counsel, for Defendants and Respondents.

Taylor & Wiley, John M. Taylor and Derek P. Cole for Real Party in Interest and Respondent.

## OPINION

**DAVIS, J.**—In this action under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq. (CEQA)), El Dorado County Taxpayers for Quality Growth, Friends of Placer County Communities, Inc., and Steven Proe (plaintiffs) appeal from a judgment denying their petition for

writ of mandate. In their petition, plaintiffs sought to overturn a decision of the El Dorado County Board of Supervisors (County). That decision approved a reclamation plan for a mining operation run by Spreckels Limestone Products Company (now Cool Cave Quarry, Inc.; hereafter Spreckels).[1] County found that the reclamation plan would not have a significant effect on the environment, and consequently approved the plan based on a negative declaration.

Plaintiffs argue generally that the reclamation plan project required an environmental impact report (EIR) rather than a negative declaration. Specifically, plaintiffs contend (1) the project description in the initial study and negative declaration fails to describe the whole project, including its mining aspect; (2) the initial study and negative declaration improperly analyze only the reclamation aspect of the project divorced from its mining aspect; (3) County violated CEQA by not preparing an EIR; and (4) County violated CEQA by failing to recirculate the negative declaration after substantially revising it. We disagree with these contentions and affirm the judgment. We conclude that plaintiffs have failed to distinguish between environmental impacts from mining activity and environmental impacts from reclamation plan activity.

BACKGROUND

Spreckels owns and operates the Cool Cave Quarry, a limestone mining operation, just off Highway 49 near the American River and the town of Cool. The quarry was mined intermittently from 1910 to 1946 and then continuously from 1946 to the present. Based on this lengthy mining history, the quarry constitutes a legal, nonconforming use and a vested mining right. (Pub. Resources Code, § 2776.)[2]

■ The Surface Mining and Reclamation Act of 1975 (§ 2710 et seq. (SMARA)) requires reclamation plans for surface mining operations conducted after 1975. These plans further SMARA's purpose of protecting the environment by reclaiming mined-out lands. (§§ 2711, 2712, 2770, subds. (a), (b), 2776.)

Spreckels had a reclamation plan approved in 1980 under SMARA. That plan needed updating in the 1990's, around the time when Spreckels was also considering leasing 16 acres of previously mined federal land at the quarry site to do additional mining. The federal land was in the hands of the Bureau

---

[1] The Cool Cave Quarry was owned by Spreckels Limestone Products Company during the pendency of the administrative proceedings. Spreckels sold the quarry to Cool Cave Quarry, Inc., a subsidiary of A. Teichert & Son, Inc., during the trial court proceedings. The parties stipulated to the substitution of Cool Cave Quarry, Inc. as real party in interest.

[2] Further undesignated statutory references are to the Public Resources Code.

of Reclamation (Bureau), which had acquired it at one point for Auburn Dam construction. The Bureau wanted a reclamation plan for the 16 acres before deciding whether to grant the lease. Apparently, this prompted County to have Spreckels include the federal land in the updated reclamation plan.

The quarry site consists of a north pit and a previously mined 200-foot-deep south pit, both of which now serve as water basins for the mining operation, and a currently mined 300-foot-deep main pit. The proposed 16-acre mining expansion includes the previously mined "Glory Hole" pit.

In December 1999, the County Planning Commission approved the reclamation plan project under CEQA with a negative declaration, finding that the plan would not have a significant effect on the environment.

Plaintiffs, among others, appealed the planning commission's decision to the County Board of Supervisors. In February 2000, the board upheld the planning commission's decision.

Plaintiffs then filed their petition for writ of mandate with the trial court in March 2000.

Our basic standard of review on appeal regarding plaintiffs' issues is the same as that of the trial court: to review the administrative record and County's actions to determine whether County complied with CEQA. (*City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 405 [117 Cal.Rptr.2d 582] (*Redlands*).)

DISCUSSION

## I. *Project Description*

Plaintiffs contend that the project description in the initial study and negative declaration fails to describe the whole project, including its mining aspect. As a result, plaintiffs argue, the initial study and negative declaration fail to fully evaluate the project's environmental impacts. We disagree.

■ Generally under CEQA, if there is a possibility that a project may have a significant environmental effect, the responsible agency must do an initial study. (*Oro Fino Gold Mining Corp. v. County of El Dorado* (1990) 225 Cal.App.3d 872, 881 [274 Cal.Rptr. 720] (*Oro Fino*).) County did so here regarding Spreckels' reclamation plan. If the initial study reveals that the project "may" have a significant environmental effect (i.e., a reasonable possibility of such an effect), an EIR must be prepared; if there is no substantial evidence of such an effect, a negative declaration is sufficient.

(*Ibid.*; *Redlands, supra,* 96 Cal.App.4th at p. 405; Cal. Code Regs., tit. 14 (hereafter Guidelines) § 15063, subd. (b)(2).)

■ Where an agency fails to provide an accurate project description, or fails to gather information and undertake an adequate environmental analysis in its initial study, a negative declaration is inappropriate. (*Redlands, supra,* 96 Cal.App.4th at pp. 406, 408.) An accurate and complete project description is necessary to fully evaluate the project's potential environmental effects. (*Id.* at p. 406; *McQueen v. Board of Directors* (1988) 202 Cal.App.3d 1136, 1143 [249 Cal.Rptr. 439] (*McQueen*).) "An initial study shall contain in brief form: [¶] . . . A description of the project . . . ." (Guidelines, § 15063, subd. (d)(1).) "A negative declaration circulated for public review shall include: [¶] . . . A brief description of the project, including a commonly used name for the project, if any[.]" (Guidelines, § 15071, subd. (a).)

■ Applying these principles here, we conclude that County provided a legally adequate project description. County described the reclamation plan project in the initial study and negative declaration as follows:

"Approval of a reclamation plan describing the methods to reclaim approximately 50 acres of surface disturbance associated with an existing open pit limestone quarry, and an approximate 16-acre expansion of the same (Bureau of Reclamation lease), following the termination of the mining activity in conformance with the Surface Mining and Reclamation Act of 1975. The site is proposed to be reclaimed to a condition suitable for open space and wildlife habitat.

"In summary, reclamation would consist of the following components to achieve improved aesthetic quality, public safety, and slope and erosional stability: (1) removal of all structures, equipment, supplies, fuels and oils, and debris; (2) regrading of cut slopes and backfilling of the south pit; (4) [*sic*] restoration of natural drainage patterns, and (5) [*sic*] finish grading work to restore natural contours and revegetation of the site with native plant materials."

This description is comprehensive. It sets forth the general nature of the project—approval of a mining reclamation plan—as well as the following specifics: the type of mine, the type of mining disturbance, the size of the project, the actions that will comprise the reclamation, the environmental and other goals of those actions, and the nature of the land and its uses after reclamation. (Cf. *Redlands, supra,* 96 Cal.App.4th at pp. 406–407 [project described merely as a clarification of land use policies was actually a substantive change of those policies]; *McQueen, supra,* 202 Cal.App.3d at

pp. 1144–1145 [project was described simply as an acquisition of property for public open space, but the property was known to be environmentally hazardous].)

Plaintiffs argue that County's "brief description" omits important information regarding the environmental impacts of existing and proposed mining activities requiring reclamation, and omits details of the proposed reclamation activities and their environmental impacts. Plaintiffs explain that a reclamation plan is designed to address mining disturbances, but since County failed to adequately describe those disturbances, the negative declaration is legally inadequate. In short, plaintiffs view the project as including the underlying mining impact that requires reclamation. We disagree for two reasons.

First, plaintiffs have misconstrued the project at issue. As the trial court succinctly noted, "[t]he project itself was reclamation and not mining." Although mining reclamation is not done without there having been mining, *the project at issue presented the environmental effect of a reclamation plan rather than the environmental effect of mining activity.* (As Spreckels concedes, the proposed expansion of mining onto the 16 acres of federal land will itself be subject to the environmental review process. Furthermore, the existing mining is allowed as a vested mining right.) As we have noted, the project description is adequate in specifying the type of mine, the type of mining disturbance, the size of the project, the actions that will comprise the reclamation, the environmental and other goals of those actions, and the nature of the land and its uses after reclamation. (See *City of Ukiah v. County of Mendocino* (1987) 196 Cal.App.3d 47, 49, 53–55 [241 Cal.Rptr. 585] [reclamation plan subject to CEQA review distinct from underlying mining activity; court upheld negative declaration for a reclamation plan that monitored the reclamation of gravel streambeds through the natural movement and deposit of gravel during winter high flows].)

Second, plaintiffs' argument, to use mining parlance, "overburdens" the function of a project description. It comes as no surprise that a project description *describes* the project; it does not *analyze* the project's environmental impacts. To the extent that plaintiffs argue the project description is incomplete or too vague to ensure complete environmental analysis in the initial study, we disagree in light of the description's comprehensiveness and specificities noted above. (See *McQueen, supra,* 202 Cal.App.3d at pp. 1144–1145; *Redlands, supra,* 96 Cal.App.4th at pp. 406–408.) And although SMARA may require that a reclamation plan specifically describe the mining operation to be reclaimed (see § 2772, subd. (c)), we are dealing with what *CEQA* requires to approve a reclamation plan in terms of the plan's environmental impact (see § 2773). Finally, here the proposed reclamation plan accompanied the initial study throughout the decisionmaking process.

We conclude that County provided a legally adequate project description.

## II. *Segmenting Reclamation from Proposed Mining Expansion for Environmental Review*

■ Plaintiffs contend that County violated CEQA by separating the reclamation plan project from the proposed mining expansion onto federal land to evade environmental review of that expansion. We disagree.

■ Environmental review under CEQA cannot be avoided by chopping up a large or cumulative project that has significant environmental effects into "bite-size pieces" that have insignificant effects individually. (*Bozung v. Local Agency Formation Com.* (1975) 13 Cal.3d 263, 283–284 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Plan for Arcadia, Inc. v. City Council of Arcadia* (1974) 42 Cal.App.3d 712, 726 [117 Cal.Rptr. 96]; Guidelines, § 15165.)

Plaintiffs raise two points.

The first point is that the reclamation plan impacts cannot be divorced from the mining impacts since a reclamation plan is designed to ameliorate mining impacts. Consequently, the mining impacts must be considered as part of the reclamation plan approval process. This point was made in the previous part of this opinion. We reject it again for the same reason: the project at issue presented the environmental impacts of the reclamation plan and not the environmental impacts of the mining activity. As Spreckels concedes, the environmental impacts of the proposed mining extension onto the federal land will have their day of review.

If the plaintiffs' first point can be analogized to marriage, their second point can be analogized to progeny. Plaintiffs contend that the mining extension onto the federal land is a foreseeable consequence of the reclamation plan, and therefore the mining extension must be incorporated into that plan's CEQA assessment.

For this contention, plaintiffs cite *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376 [253 Cal.Rptr. 426] (*Laurel Heights*). There our high court held "that an EIR must include an analysis of the environmental effects of future expansion or other action if: (1) it is a reasonably foreseeable consequence of the initial project; and (2) the future expansion or action will be significant in that it will likely change the scope or nature of the initial project or its environmental effects. Absent these two circumstances, the future expansion need not be considered in the EIR for the proposed project." (*Id.* at p. 396; see also Guidelines, § 15130, subd. (b)(1)(A) [stating at the time of *Laurel Heights, supra,* at

p. 394, that a discussion of cumulative effects should encompass "reasonably anticipated future projects"; stating now, "probable future projects"].) The *Laurel Heights* court added, "[o]f course, if the future action is not considered at [the] time [of the initial project], it will have to be discussed in a subsequent EIR before the future action can be approved under CEQA." (*Laurel Heights*, at p. 396.)

■ As for the first part of the *Laurel Heights* test concerning foreseeable consequence, it appears that the approval of the mining extension onto the federal land is more dependent on factors aside from whether a reclamation plan is in place (for example, environmental, social, and political factors). An approved reclamation plan must generally be in place under SMARA to conduct any surface mining operations. (§ 2770, subds. (a), (b).) Bureau and County, it appears, simply believed that it would be efficient to include the proposed mining extension in the ongoing update of the reclamation plan for the current mining activity. In this respect, the mining extension may not be a reasonably foreseeable or probable consequence of the reclamation plan update. Nevertheless, it must be noted that part of the overburden from the proposed mining expansion is slated to be used to refill (reclaim) an old mining pit, the south pit. It is unclear how necessary this overburden is to the reclamation plan, but Spreckels has stated that the plan may have to be amended if the mining expansion lease is not granted.

As for the second part of the *Laurel Heights* test concerning a change of the initial project, the proposed mining extension does not change the reclamation plan project. The only reclamation plan that County approved was the reclamation plan that included this proposed extension. Of course, as noted, the proposed mining extension will itself be subject to environmental review.

We conclude that County did not improperly segment the reclamation plan project.

III. *EIR and Failure to Recirculate the Negative Declaration*

Plaintiffs contend that County violated CEQA by not preparing an EIR for the reclamation plan project. We disagree.

■ "A governmental agency must prepare an EIR on any project that may have a significant impact on the environment. If there is no substantial evidence of any significant environmental impact, however, the agency may adopt a negative declaration." (*Redlands, supra,* 96 Cal.App.4th at p. 405, fns. omitted.) Thus, an agency must prepare an EIR whenever it can be *fairly argued* on the basis of substantial evidence that a proposed project may have a significant environmental effect. (*Ibid.*; *Oro Fino, supra,* 225 Cal.App.3d at pp. 880–881.)

Plaintiffs contend there is substantial evidence showing, at a minimum, potentially significant environmental impacts involving geologic stability, wildlife and habitat, and air quality. The geologic stability contention also encompasses an issue of failing to recirculate the negative declaration.

A. *Geologic Stability and Failure to Recirculate the Negative Declaration*

1. *Geologic stability*

Plaintiffs argue that County failed to evaluate significant environmental impacts from potential and past landslides (1987, 1988, 1995), from over-blasting, and from blasting and excavation near Highway 49. We disagree.

The initial study does evaluate the landslides. The past landslides resulted from overburden from mining being placed on slopes that were not engineered for stability. The initial study states that the 1995 slide slope has been rebuilt to eliminate the potential of any future failure. Also, the negative declaration requires that all new cut and fill slopes exceeding a two-to-one slope are to be engineered, taking into account ground and specified soil conditions. Finally, all new fill slopes must be compacted in lifts and revegetated. According to the initial study and negative declaration, these measures reduce the landslide impact to less than significant.

As for the alleged failure to evaluate the blasting and the excavation impacts, these impacts are from mining rather than from the reclamation plan. The reclamation plan does not involve any blasting or further excavation. Consequently, blasting and excavation impacts cannot be deemed reclamation plan impacts requiring an EIR. (Blasting and excavation impacts, however, would be subject to environmental review for any relevant mining project.)

Plaintiffs point to comment letters that the California Department of Transportation (Caltrans) submitted during the initial study review process. These letters, dated November 18 and November 30, 1999, stated generally that the geotechnical portion of the reclamation plan needed additional information to adequately assess the stability of a one-fifth-mile segment of Highway 49 "based on past mining activity and proposed future reclamation activity." A reading of the Caltrans letters, however, shows that Caltrans's specific concerns regarding stability were limited to past mining activity. Caltrans noted its belief "that the highway distress is due to the nearby mining actions and excavation carried out in the North Pit." And Caltrans added that the reclamation plan "does not address overblasting and potential damage to the highway from nearby blasting and excavation."

Thus, Caltrans's concerns regarding geologic stability involved past mining impacts from blasting and excavation rather than reclamation plan impacts.

Nevertheless, County had those concerns investigated as part of the reclamation plan process. That investigation disclosed that the area in question had been stable for the past 10 years, that past instability had been due to mining activity, that no mining activity had occurred in the area for over 10 years, and that no such activity was planned in the vicinity that might reactivate the instability. To address Caltrans's concerns, Spreckels committed to a program designed by a registered geologist to monitor slope stability, to fix any instability detected, and to conduct blasting (if any) to avoid any damage to Highway 49, and to do any repair or (Highway 49-proximate) blast work to Caltrans's satisfaction. This program was made a part of the reclamation plan—although the program addressed mining impacts rather than reclamation impacts—and satisfied Caltrans's concerns.

We conclude that geologic stability impacts did not require County to prepare an EIR.

### 2. Failure to recirculate the negative declaration

Plaintiffs contend that County violated CEQA by failing to recirculate the negative declaration after substantially revising it. We disagree.

This contention stems from the November 18 and 30, 1999, comment letters noted just above that Caltrans sent to County during the initial study review process. In those letters, Caltrans expressed concerns over the geologic stability of a one-fifth-mile segment of Highway 49 based on the past mining activities of blasting and excavating. As noted, County had those concerns investigated and Spreckels adopted a program in the reclamation plan (the Spreckels program) to address them to Caltrans's satisfaction.

The County official in charge of analyzing the reclamation plan for CEQA purposes, Senior Planner Pierre Rivas, submitted a memorandum to the County Planning Commission one day before the commission's scheduled hearing on the reclamation plan. Rivas recommended that the Spreckels program be included in that plan. The planning commission followed Rivas's recommendation, and then approved the reclamation plan with a negative declaration.

Plaintiffs maintain that including the Spreckels program in the reclamation plan substantially revised the plan, necessitating public recirculation of the negative declaration. An agency is required to recirculate a negative declaration when it has been substantially revised after being initially circulated. (Guidelines, § 15073.5, subd. (a).)

Plaintiffs' argument falls victim once more to the theme distinguishing mining impacts from reclamation plan impacts. As noted above, Caltrans's

comments of November 18 and 30, 1999, concerned impacts to Highway 49 stemming from past mining activity (blasting, excavating) rather than impacts stemming from the reclamation plan. As such, recirculation was not required. Recirculation of a negative declaration is not required (1) if "[n]ew project revisions are added in response to written or verbal comments on the project's effects identified in the proposed negative declaration which are not new avoidable significant effects"; or (2) if "[m]easures or conditions of project approval are added after circulation of the negative declaration which are not required by CEQA, which do not create new significant environmental effects and are not necessary to mitigate an avoidable significant effect." (Guidelines, § 15073.5, subd. (c)(2) & (3), respectively.) Here, the addition of the Spreckels program to the reclamation plan addressed environmental effects of past mining activity rather than environmental effects of the project at issue—the reclamation plan. In short, the Spreckels program was simply an added bonus to the reclamation plan and did not trigger negative declaration recirculation. As the trial court aptly observed, "the mitigation [set forth in the Spreckels program] was of an impact caused by vested mining and not the reclamation plan and thus was a gratuitous act of Spreckels incorporated in the plan." (Spreckels and its successor, of course, are nonetheless bound to this program that was made a part of the reclamation plan.)

### B. *Wildlife and Habitat Impacts*

Plaintiffs note that about 16 acres of habitat comprising chaparral, grass and oak woodland will be destroyed during the seven-year excavation phase of the expanded mining operation, and that blasting will decimate and adversely affect wildlife.

These impacts, however, are from the proposed 16-acre expanded mining operation onto the federal land. They do not result from the reclamation plan. The environmental review for the expanded mining operation will address these impacts.

### C. *Air Quality Impacts*

Plaintiffs contend that an EIR is required to address the air quality impacts of the reclamation plan project. We disagree.

El Dorado County violates the state and federal air quality standard for the pollutant ozone, and the state standard for the pollutant fine particulate matter (PM-10; e.g., dust), at the site surrounding the Cool Cave Quarry.

Plaintiffs argue that the reclamation project's proposed excavation, grading and filling activities will negatively impact air quality by releasing ozone

precursors and dust. Furthermore, plaintiffs maintain that "it can be estimated [from the reclamation plan] that there will be 100 truckloads per day for filling and excavation activities."

These arguments are undermined in that the reclamation plan does not involve *excavation* activity. Moreover, the lengthy record passage and self-serving statements to which plaintiffs cite for the 100-truckload figure are unclear as to how that figure was comprised; as noted, the figure apparently does include the mining activity of excavation.

Plaintiffs' arguments also run headlong into the County Department of Transportation's finding that "[a]s proposed the reclamation plan will not increase traffic in the area. With the shift to open space uses when the quarry operations cease, the traffic generation will be reduced considerably." Evidence showed that no cumulative increase of traffic or mining equipment is proposed by the reclamation plan. Moreover, to address the particulate matter issue, County required that the reclamation plan include "the current approved Air Pollution Control District Fugitive Dust and Control Plan."

Based on this record, the initial study and negative declaration regarding air quality impacts concluded as pertinent: "The western El Dorado County air basin is currently designated as a State non-attainment area for ozone (O3) and PM-10. The [reclamation plan] removal of structures, finish grading work, and revegetation activities are not anticipated to create dust of any significance. The operation of earth moving equipment would create temporary air quality impacts through the release of particulate matter and the release of . . . ozone precursors . . . . These impacts would be less than that presently imposed by the mining operation and are therefore considered less than significant. Restoring the site to open space/wildlife habitat would eliminate any emissions following the conclusion of the reclamation activities."

Plaintiffs counter that the negative declaration's conclusion—that the reclamation plan's impacts to air quality would be less than those from the current mining operation—fails to address the cumulative impacts. As Spreckels notes, however, given the overall reduction in air quality impacts in converting from mining to reclamation, the reclamation project cannot have an additional cumulative impact.

 We conclude that County properly determined that the potential geologic, wildlife/habitat and air quality impacts did not require an EIR.

### Disposition

The judgment is affirmed.

Scotland, P. J., and Nicholson, J., concurred.