Filed 2/17/21  P. v. Maplebear, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | D077380 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2019-00048731-CU-MC-CTL) |
| MAPLEBEAR, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy Taylor, Judge.  Reversed and remanded.

Keker, Van Nest & Peters, Rachael E. Meny, Benjamin Berkowitz, Ryan K. Wong, Erin E. Meyer, Julia L. Allen, Donna Zamora-Stevens, Taylor Reeves and Melissa Cornell for Defendant and Appellant.

Littler Mendelson, Bruce J. Sarchet and Michael J. Lotito for Independent Women's Law Center as Amicus Curiae on behalf of Defendant and Appellant.

Jones Day, Craig E. Stewart and Eric Tung for Chamber of Commerce of the United States of America, California Grocers Association, Bay Area Council, San Francisco Chamber of Commerce, and Valley Industry and

Commerce Association as Amici Curiae on behalf of Defendant and Appellant.

Orrick, Herrington & Sutcliffe, Haley Jankowski, Julia C. Riechert and Jessica R. Perry for David R. Henderson and Other Academics and Economists as Amici Curiae for Defendant and Appellant.

Willenken, Amelia L. B. Sargent and Kenneth M. Trujillo-Jamison for California Asian Pacific Chamber of Commerce, California Hispanic Chambers of Commerce, California State National Action Network, Los Angeles Metropolitan Churches, Los Angeles Urban League, National Action Network Sacramento Chapter Inc., National Asian American Coalition, National Diversity Coalition, and National Newspaper Publishers Association as Amici Curiae on behalf of Defendant and Appellant.

Durie Tangri, Benjamin B. Au and Raghav R. Krishnapriyan for Independent Drivers Association of California, Tony Do, and Jim Pyatt as Amici Curiae on behalf of Defendant and Appellant.

Mara W. Elliott, City Attorney, Mark Ankcorn, Chief Deputy City Attorney, Kevin B. King, Deputy City Attorney for Plaintiff and Respondent.


Maplebear, Inc. dba Instacart (hereinafter "Instacart") appeals from a preliminary injunction enjoining and restraining Instacart from "failing to comply with California employment law with regard to its Full-Service Shopper employees within the City of San Diego." The superior court issued the injunction after finding the People of the State of California, acting by and through the San Diego City Attorney, (hereinafter "the City") demonstrated a probability of success on their claim Instacart was improperly classifying Full-Service Shoppers as independent contractors, and

2

not employees, based on the ABC test set forth in *Dynamex Operations West, Inc. v. Super. Ct.* (2018) 4 Cal.5th 903 (*Dynamex*).

Instacart asserts the superior court lacked authority to issue the preliminary injunction because it had previously filed a motion to compel arbitration and a request to stay the action pending resolution of the motion pursuant to Code of Civil Procedure section 1281.4. Alternatively, Instacart asserts the superior court erred by granting the preliminary injunction because the Full-Service Shoppers are motor carriers and a federal statute (49 U.S.C. § 13102(14), "the FAAAA") preempts application of the ABC test to motor carriers, the City did not prove a probability of success under the ABC test even if it is applicable, and the balance of harms did not weigh in favor of granting the preliminary injunction. Instacart also asserts the injunction is impermissibly vague.

In November, while this appeal was pending, the people of California voted to enact Proposition 22, "App-Based Drivers as Contractors and Labor Policies Initiative (2020)" (hereinafter "Proposition 22"). Instacart requests this court take judicial notice of Proposition 22 and asserts Proposition 22 is a significant change in law that directly permits the classification of the Full-Service shoppers as independent contractors. Accordingly, Instacart contends the injunction must be reversed and the matter remanded to the superior court for further proceedings in light of Proposition 22.

We are not persuaded the superior court lacked the authority to rule on the preliminary injunction motion, but agree the preliminary injunction as issued is impermissibly vague, particularly in light of the changes to the law effectuated by Proposition 22. We therefore reverse the order and remand

the matter to the superior court for further proceedings consistent with this opinion.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### A

In April 2019, the California Supreme Court adopted the standard commonly referred to as the "ABC test" for determining whether a worker is an employee or an independent contractor. (See *Dynamex, supra,* 4 Cal.5th at pp. 916-917.) "Under this test, a worker is properly considered an independent contractor to whom a wage order does not apply only if the hiring entity establishes: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." (*Ibid.*)

---

[1] We have read and considered the amicus curiae briefs submitted by the following parties: The Chamber of Commerce of the United States of America, California Grocers Association, Bay Area Council, San Francisco Chamber of Commerce, and Valley Industry and Commerce Association (collectively, "CCUS"); The Independent Women's Law Center ("IWLC"); David R. Henderson and other academics and economists (collectively, "Henderson"); The Independent Drivers Association of California and Tony Do and Jim Pyatt (collectively "Individual Shoppers"); and The California Asian Pacific Chamber of Commerce, California Hispanic Chambers of Commerce, California State National Action Network, CA-NAACP State Conference, Los Angeles Metropolitan Churches, Los Angeles Urban League, National Action Network Sacramento Chapter Inc., National Asian American Coalition, National Diversity Coalition, and National Newspaper Publishers Association ("Communities-of-Color Organizations").

Thereafter, in September 2019, the California Legislature enacted Assembly Bill No. 5, which clarified and codified the ABC test set forth in *Dynamex* and gave city attorneys meeting certain criteria the authority to seek injunctive relief to prevent the misclassification of employees as independent contractors based on the ABC test. (See Assem. Bill No. 5; Lab. Code, § 2750.3 [eff. Jan. 1, 2020; repealed by Stats. 2020, ch. 38 (Assem. Bill No. 2257), § 1, eff. Sept. 4, 2020]; Lab. Code, § 2775 [replacing § 2750.3].) The Legislature acknowledged the legally-defined exceptions to the application of the ABC test and further indicated, if a court of law rules the ABC test cannot be applied to a particular context, the alternative test set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*) shall govern. (See Lab. Code, § 2775, subd. (b)(3); prev. Lab. Code, § 2750.3, subd. (a)(3).)

B

Founded in 2012, Instacart partners with national, regional, and local retail grocers to provide same-day shopping, pickup, and delivery services to consumers across the United States and Canada through either the Instacart website or the Instacart smartphone application software program (the "Instacart App").

Instacart provides a consumer-facing virtual storefront for retailers. Individual retailers decide which items to offer and at what price, and the Instacart platform allows them to monitor their virtual storefronts and update inventory on a daily basis. Customers are able to browse a particular store's inventory via the Instacart website or the Instacart App and place orders for delivery during a specified timeframe.

Instacart hires shoppers to fulfill and deliver the customers' orders. Instacart employs In-Store Shoppers that gather groceries but do not deliver

5

them as part-time employees and Full-Service Shoppers that both gather and deliver groceries as independent contractors.[2] There are approximately 2,000 active Full-Service Shoppers in San Diego.

Full-Service Shoppers are able to schedule shifts by picking from those available on the Instacart App. They can choose the days, times, and number of hours they wish to work. If a Full-Service Shopper works at least 90 hours in a three-week period or 25 hours over the previous three weekends, the shopper is granted early access privileges for scheduling shifts.

If a Full-Service Shopper chooses to schedule a shift, the shopper begins receiving batch (grocery order) notifications once the shift begins. When a notification is received, the Instacart App displays information about the batch, including the store location, the distance to the delivery location, the number of items in the order, and the compensation offered to the shopper for completing the batch. Each batch is offered for approximately four minutes. If the shopper does not accept the batch in the allotted time, a new batch will be offered. If a Full-Service Shopper fails to accept a batch, they receive a "reliability incident", and if they fail to accept four batches during a single shift, the shift is automatically terminated. A Full-Service Shopper has the option to decline a batch, without penalty, during the last half-hour of a scheduled shift.

Once a Full-Service Shopper accepts a batch, the Instacart App displays the list of items in the order and provides a suggested route through the grocery store to collect the items. The shopper must scan or manually input each item collected. The shopper uses an Instacart issued debit card to pay for the items and, once all items are collected and paid for, the Instacart App displays the delivery address for the order.

---

[2] The preliminary injunction applies only to Full-Service Shoppers.

Instacart added an "On-Demand" option for Full-Service Shoppers in July 2019.  This option allows Full-Service Shoppers to view a list of available batches at any time.  If there are batches available, the shopper can simply select the batches they would like to accept, without scheduling a shift.  In some areas of California, Instacart no longer offers shifts for Full-Service Shoppers and all deliveries are done through the On-Demand option.  Approximately one-half of deliveries completed in January 2020 were done through the On-Demand option.  Where shifts are still available, a Full-Service Shopper has the option of working shifts, working On-Demand, or doing a combination of both.  If a shopper gets logged out of a shift for failing to accept batches, the shopper may still work On-Demand.

Full-Service Shoppers are not paid hourly.  They receive a payment for each batch of groceries they deliver.  Instacart sets the amount for each batch, considering factors such as the miles from the store to the customer's home and the number of items and weight of the order.  Instacart does not compensate Full-Service Shoppers for time spent waiting for batches or miles driven to the store.  Instacart does not offer paid breaks or overtime pay but does provide the option to take an unpaid 20-minute break during a scheduled shift.  Instacart does not provide reimbursement for shopping related expenses, such as paid parking or insulated shopping bags that shoppers are required to carry.

C

On September 13, 2019, the City filed a complaint against Instacart alleging Instacart maintained an unfair competitive advantage by misclassifying Full-Service Shoppers as independent contractors.  Relying on the ABC test set forth in *Dynamex*, the City asserted Instacart could not meet its burden to show the Full-Service Shoppers were independent contractors

7

because it could not show "(A) its [Full-Service] Shoppers are free from the control and direction of Instacart in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) its Shoppers perform work that is outside the usual course of Instacart's business; and (C) its Shoppers are customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for Instacart."  (See *Dynamex, supra,* 4 Cal.5th at pp. 916-917.)

As a result of the misclassification, the City alleged Instacart avoided paying Full-Service Shoppers a lawful wage, unlawfully deferred substantial expenses to the shoppers, failed to comply with numerous provisions of the Labor Code, and maintained an unfair advantage over its competitors by contributing less to California's unemployment insurance, disability insurance, and other state and federal taxes.  The City sought penalties based on the Labor Code violations, restitution for misclassified employees, and an order requiring Instacart to properly classify Full-Service Shoppers as employees.

On November 7, 2019, Instacart filed a motion to compel arbitration based on arbitration clauses in the independent contractor agreements Instacart required Full-Service Shoppers to sign as a condition of their employment.  Instacart also moved for an order staying the litigation pursuant to Code of Civil Procedure section 1281.4, immediately and until resolution of the arbitration motion.  The motion listed the hearing date as February 28, 2020.

On January 29, before the February 28 hearing and before the superior court ruled on Instacart's stay request, the City filed an ex parte application for a temporary restraining order enjoining Instacart from misclassifying Full-Service Shoppers as independent contractors and an order to show cause

8

why a preliminary injunction should not be issued. Instacart filed an opposition, along with several supporting declarations, shortly thereafter on February 3.

The superior court held a hearing regarding the ex parte application on February 4. The court indicated it was not inclined to grant the temporary restraining order on an ex parte basis, given the significant and factually intensive issues. Instacart asserted it had already requested a stay pending the motion to compel arbitration and, thus, the court should not hear the motion for preliminary injunction prior to the motion to compel arbitration. The court set the matter as a regularly noticed motion for a preliminary injunction, to be heard on February 14, and deemed the ex parte application as the opening brief and Instacart's opposition as the reply.

The superior court issued a tentative ruling before the hearing indicating it intended to grant the preliminary injunction. However, the court indicated the proposed order was not acceptable and ordered the City to submit a new proposed order re-drafted as a prohibitory injunction.

The court heard argument on the preliminary injunction motion on February 14, the same day the City filed its opposition to Instacart's motion to compel arbitration and to stay the matter. At the hearing, Instacart did not raise the issue of the motion to compel arbitration or the associated request that the court stay the matter but did request that the court stay any injunction it intended to issue.

On February 18, the superior court confirmed the tentative ruling and granted a preliminary injunction. The court noted the City had provided a revised proposed order that "was little better". The court therefore signed its own significantly simplified version of the preliminary injunction order. The order states, Instacart "is hereby enjoined and restrained from failing to

9

comply with California employment law with regard to its Full-Service Shopper employees within the City of San Diego." The court noted the preliminary injunction was not a final order and was subject to modification or dissolution at any time based on a material change in the facts or law upon which the injunction was granted. In addition, the court noted enforcement of the injunction was stayed for 10 days pursuant to Code of Civil Procedure section 918.

On February 25, before the 10-day stay expired, Instacart filed an ex parte application asking the superior court to confirm the preliminary injunction would be automatically stayed upon Instacart's filing of a notice of appeal or, in the alternative, to stay enforcement of or dissolve the preliminary injunction. The superior court denied the request without prejudice and indicated it would rule on a stay after Instacart filed a notice of appeal. Instacart filed a notice of appeal from the preliminary injunction order a few days later and the superior court stayed the preliminary injunction pending this appeal.

D

While the present appeal was pending, the people of California voted to enact Proposition 22, and Instacart requested this court take judicial notice of Proposition 22.[3] In its reply brief, Instacart argues the passage of

[3] We granted Instacart's unopposed Request for Judicial Notice via separate order on December 18, 2020. On January 26, 2021, the City filed an additional request that we take judicial notice of an emergency petition for writ of mandate filed in the California Supreme Court regarding Proposition 22 (*Castellanos v. State of Cal.*, Jan. 12, 2021, No. S266551) and an order from the superior court in *People v. Uber Technologies, Inc.* (Cal.Super., Aug. 10, 2020, No. CGC-20-584402) denying a request for a stay pursuant to Code of Civil Procedure section 1281.4. We hereby deny the City's request as neither document is necessary to the resolution of this appeal. (See *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

10

Proposition 22 requires this court to vacate the preliminary injunction and remand the matter to the superior court for further proceedings regarding the impact of Proposition 22.

As briefing on the appeal was otherwise complete, we permitted the City an opportunity to file a supplemental brief responding to Instacart's assertions regarding Proposition 22. In its supplemental brief, the City concedes the applicability of Proposition 22 is a fact-based inquiry and the matter should be remanded to the superior court for that purpose but asserts reversal of the preliminary injunction is unwarranted.

DISCUSSION

I

We turn first to Instacart's assertion the superior court did not have authority to rule on the City's motion, or to issue a preliminary injunction, because the matter should have been stayed pursuant to Code of Civil Procedure section 1281.4 pending resolution of its motion to compel arbitration.

The City contends Instacart's motion for a stay was not before the court when the court heard the preliminary injunction motion. We agree.

11

Code of Civil Procedure section 1281.4 states, in part:

> "If an application has been made to a court of competent jurisdiction, whether in this State or not, for an order to arbitrate a controversy which is an issue involved in an action or proceeding pending before a court of this State and such application is undetermined, ***the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined*** and, if arbitration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (Emphasis added.)

Here, Instacart filed its notice of motion to compel arbitration on November 7, 2019. The motion papers included a hearing date of February 28, 2020. Instacart included the following statement in the notice of motion: "Instacart also moves for an order staying this case immediately pursuant to Code of Civil Procedure section 1281.4 until the instant motion is resolved." It included a similar statement at the end of the associated memorandum of points and authorities in support of the motion and attached a proposed order staying the action "pursuant to Code of Civil Procedure section 1281.4 pending the Court's resolution of Instacart's pending Motion to Compel Arbitration." Like the other filings, the proposed order indicated a hearing date of February 28, 2020.

The City filed its ex parte application for a temporary restraining order on January 29 and acknowledged, at the associated hearing on February 4, that it was attempting to get an injunction prior to the ruling on Instacart's motion to compel arbitration. In response, Instacart stated it had already asked for a stay pursuant to Code of Civil Procedure section 1281.4, and it believed the stay would preclude any proceedings on the City's motion until after the motion to compel arbitration was resolved. The court refused to

12

address the issue at that time and instead set the matter for a noticed motion hearing on February 14. Instacart did not address the motion to compel arbitration or the associated request for a stay at the preliminary injunction hearing on February 14 and chose, instead, to address the merits of the court's tentative decision to issue a preliminary injunction.

Instacart now contends Code of Civil Procedure section 1281.4 required the superior court to stay the action prior to ruling on the City's motion for a temporary restraining order or preliminary injunction, but, as noted, Instacart's motion was not scheduled to be heard until February 28, 2020, after the preliminary injunction hearing. Instacart complains the court allowed the City to "jump in front" of its motion, but Instacart had the same procedural options at its disposal and could have, for example, filed the stay request separately, along with a motion to shorten time. Instacart failed to do so.

Instacart asserts nothing in Code of Civil Procedure section 1281.4 required it to file a separate pleading requesting a stay. We agree. However, that does not mean the superior court was required to rule on the request for a stay included in the larger filing prior to the noticed hearing date of February 28, and Instacart provides no authority indicating that it does. Indeed, the City only filed its opposition to that motion on February 14, the same day the superior court heard argument on the City's motion for preliminary injunction.

Instacart relies on *Twentieth Century Fox Film Corp. v. Superior Court* (2000) 79 Cal.App.4th 188 (*Twentieth Century*) to assert the stay was mandatory and the superior court had no discretion to deny it. There, Twentieth Century filed a motion to stay the case pursuant to Code of Civil Procedure section 1281.4 and the superior court denied the motion. (*Id.* at

13

pp. 190-191.) Accordingly, the appellate court addressed the merits of the superior court's denial of the motion, not the timing. (*Id.* at p. 192.) Here, the superior court did not deny Instacart's request for a stay; it simply ruled on another expedited motion first.

In any event, Instacart suffered no prejudice as a result of the superior court's ruling on the City's motion for preliminary injunction. The superior court stayed the preliminary injunction pending the outcome of this appeal and we now reverse the injunction as impermissibly vague.

## II

The preliminary injunction enjoins and restrains Instacart "from failing to comply with California employment law with regard to its Full-Service Shopper employees within the City of San Diego." Instacart asserts the order is impermissibly vague and must be reversed. We agree.

An injunction cannot "satisfy the requirements of notice and fair trial which are inherent in the due process clause of the Fourteenth Amendment" if it is " 'so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application . . . .' " (*In re Berry* (1968) 68 Cal.2d 137, 156-157.) Put more simply, for an injunction to be valid, the enjoined party must be able to determine what they may or may not do in order to comply with the injunction. (*Ibid.*; *City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 415 (*City of Redlands*).) While a court may enjoin continued unlawful activity related to the allegations prompting the request for an injunction, a court "may not issue a broad injunction to simply obey the law. . . ." (*City of Redlands*, at p. 416; *N.L.R.B. v. Express Pub Co.* (1941) 312 U.S. 426, 435-436.)

We review the superior court's decision to issue a preliminary injunction for an abuse of discretion and defer to the court's factual findings

14

so long as they are supported by substantial evidence. (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 282.) However, we review vagueness claims, grounded in the constitutional concepts of fair warning and due process, de novo. (*Ibid.*; *In re P.O.* (2016) 246 Cal.App.4th 288, 299.) In determining whether an injunction provides sufficient notice of the proscribed or compelled conduct, we consider the language of the injunction itself in light of the entire record. (*City of Redlands, supra*, 96 Cal.App.4th at pp. 415-416.)

Viewed in the context of the entire record, the injunction here is impermissibly vague. It enjoins Instacart from failing to comply with California employment law with regard to its Full-Service Shoppers, but does not explain what Instacart needs to do, or not do, in order to comply with the law.

In the associated minute order, the superior court explains the City demonstrated a probability of success on the merits because it made "a very plausible showing of improper classification under the ABC test." The City asserts Instacart is well versed in the ABC test the court referred to and, therefore, must understand what it needs to do to obey the law. Notably, though, the court rejected more specific language enjoining Instacart from misclassifying the Full-Service Shoppers as independent contractors, and suggested Instacart could either make the Full-Service Shoppers employees or make them "truly free agents" by looking at "*Borello* or whatever test you think applies, and [trying] to bring yourself within that."

Counsel for Instacart indicated it was not clear what additional steps the court believed would be necessary to make the Full-Service Shoppers truly free agents. After further discussion, the court stated, "There are cutting-edge things here. There are undeveloped areas of law. A multitude

15

of them." The court further indicated additional legal proceedings, including the present appeal, were necessary for Instacart to have "the certainty of knowing what is required of it." At a subsequent hearing regarding Instacart's request to stay the preliminary injunction pending appeal, the court noted, "it was intentional on my part to say, go comply with the Law." The court explained its reason for doing so was because Instacart knows more about its business than the court and "has excellent lawyers who can take this apart and figure out what they need to do to bring themselves into compliance."

Thus, the record makes clear the superior court drafted the injunction in a manner that requires Instacart to determine how to comply with a decidedly undeveloped area of law. By doing so, the court failed to provide adequate notice of the conduct proscribed by the injunction. (See *City of Redlands, supra,* 96 Cal.App.4th at pp. 415-416.) Given the record in this case, there can be no doubt people of common intelligence would differ as to the meaning and application of the relevant law in this context. (See *In re Berry, supra,* 68 Cal.2d at pp. 156-157.)

The issue is further compounded by the recent passage of Proposition 22.[4] Proposition 22 allows "app-based drivers" to be classified as independent contractors, so long as they meet four express conditions set forth in the statute, "[n]otwithstanding any other provision of law, including, but not limited to, the Labor Code[.]" The parties agree Proposition 22 establishes an additional exemption from the application of the ABC test—

_____

[4] The election results were certified on December 11, 2020, and Proposition 22 is now California state law. (See Cal. Const., art. II, § 10(a) ["An initiative statute or referendum approved by a majority of votes cast thereon takes effect on the fifth day after the Secretary of State files the statement of the vote for the election at which the measure is voted on . . ."].)

the legal basis upon which the superior court issued the preliminary injunction—and thus presents an additional defense to Instacart. Although the City contends Instacart is unlikely to prove Full-Service Shoppers meet the conditions set forth in Proposition 22, it concedes the superior court is the "far more appropriate place to hear, weigh, and find facts and that court should be afforded the first opportunity to reconsider its own ruling."

The City argues we should nevertheless affirm the injunction as the superior court will be able to consider the impact of Proposition 22 once the matter is returned. Indeed, it appears the superior court has already contemplated this possibility insofar as it expressly stated the injunction is subject to modification or dissolution based on a material change in facts or law. However, as an injunction provides ongoing relief, it must be reviewed "under the law in effect at the time the appellate court renders its opinion." (See *Hunt v. Super. Ct.* (1999) 21 Cal.4th 984, 999; *Consumer Watchdog v. Dep't of Managed Health Care* (2014) 225 Cal.App.4th 862, 879.) Here, as discussed, the injunction requires Instacart to follow the law, but the law has now changed, and the parties disagree as to the impact of that change, namely whether Proposition 22 precludes the application of the ABC test in this case. No court has addressed this issue. Accordingly, there is no way for Instacart to know whether it is, or is not, complying with the law or the injunction, and the injunction must be reversed. (See *City of Redlands, supra,* 96 Cal.App.4th at pp. 415-416; *In re Berry, supra,* 68 Cal.2d at pp. 156-157.)

We acknowledge the goal of the superior court was to permit this court to provide clarity to the parties regarding the scope and applicability of *Dynamex* and the ABC test in an expeditious manner. However, we decline to do so under the present posture, particularly given the significant change

17

in law and the distinct possibility the ABC framework no longer applies in this case.

## DISPOSITION

The superior court's order granting a preliminary injunction is reversed and the matter is remanded to the superior court for further proceedings consistent with this opinion.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DATO, J.